OF THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

## FALL-SPECIAL TERM, 1897.

### CHARLESTON.

LEHMAN *et al* v. HINTON *et al*.

Submitted January 27, 1897—Decided November 11, 1897.

1. DECREE—*Liens—Appeal.*
    A decree ascertaining and fixing the amounts and priorities of liens on real estate, and providing for sale thereof by special commissioner, unless such liens are paid by a future day, mentioned in the decree, is appealable, and can only be corrected on appeal or bill of review taken or filed within the time prescribed by statute. (p. 17.)

2. DECREE—*Res Adjudicata.*
    Such decree is *res adjudicata* as to all payments made prior to its date, on account of any claim therein decreed to be paid. (p. 17.)

Appeal from Circuit Court, Summers County.

Bill by Lehman, Richman & Co., and another against

Evan Hinton and others to marshal liens.    From a decree
for part of defendants, defendant Evan Hinton appeals.

*Modified.*

OKEY JOHNSON, J. H. McGINNIS and J. H. MILLER, for appellants.

A. F. MATHEWS, for appellees.

McWHORTER, JUDGE:

At April rules, 1883, of Summers county circuit court,
Lehman, Richman & Co. and A. C. Snyder, who sue for
themselves and all other lienholders of Evan Hinton who
will come in and contribute to the expenses of the suit,
filed their bill in chancery against Evan Hinton, Joseph
Hinton, Richard Woodrum, Joseph Ellis, William Hinton,
Avis Hinton, John Hinton, J. Speed Thompson, M. V. Calloway, James Roles, administrator of Henry Gore, William M. French, Adaline B. French, John Clark, Lydia
Clark, W. A. Crotley, Mary A. Crotley, and James H. Gore,
setting up a judgment lien of the said Lehman, Richman
& Co., and also a judgment lien in favor of A. C. Snyder
against Evan Hinton, in which judgment the said Evan
Hinton was principal, and the other defendants his sureties, alleging that he was seised and possessed of real
estate of large quantity and great value in Summers and
other counties of this State, the location and description
whereof are unknown to the plaintiffs, and alleging that
said Evan Hinton was at one time sheriff of Summers
county, and that the sureties on his official bond were
Joseph Hinton, Richard Woodrum, Joseph Ellis, William
Hinton, Avis Hinton, John Hinton, J. Speed Thompson,
M. V. Calloway, and Henry Gore.    That Gore had departed this life, and James Roles had qualified as his administrator.    That he left surviving him a widow, Adaline
B. Gore, who has since intermarried with the defendant
William M. French, and the following children:    James H.
Gore, Lydia, who has since married John Clark; Mary A.,
who married W. A. Crotley.    And alleging that there are
a large number of judgments in said court and in other
courts unpaid and unsatisfied, some against said Evan
Hinton separately, and some against him and his sureties
on his official bond as sheriff, all of which constituted liens

on said real estate; and also that there are other liens
created by trust deeds still unsatisfied, and that the num-
ber of lienholders exceeds ten; praying enforcement of
said liens by the sale of the real estate for their payment,
and that necessary, and proper accounts be ordered and
directed, and for general relief.

On the 10th of May, 1883, the cause was referred to
Commissioner E. H. Peck to ascertain the lands owned by
the defendant Evan, and also to ascertain all the debts
against Evan which were liens upon said land, and their
respective dignities and priorities. On the 3rd of Sep-
tember, 1885, said commissioner filed his first report, set-
ting out the liens on the property of said Evan, among
which was a judgment in favor of A. F. Mathews against
Evan Hinton, Avis Hinton, John Hinton, William Hinton,
and Joseph Hinton for ten thousand seven hundred and
eighty dollars and fifty-six cents. On the 9th of Septem-
ber, 1885, the cause was recommitted for the purpose of
ascertaining certain credits to which the defendant Hin-
ton was entitled on some of the judgments reported. On
the 8th of February, 1886, the commissioner again report-
ed, reporting the said judgment of Mathews at eleven
thousand and thirteen dollars and sixty-seven cents. On
the 9th of February, 1886, said second report was recom-
mitted to Commissioner Peck, with instructions to inquire
into, ascertain, and report upon various questions and
matters raised and presented by exceptions taken thereto,
and to take and consider any evidence that might be ad-
duced before him in relation to said matters, or as to
amounts and priorities in any of the debts in said report
mentioned; to reform and restate the said report in ac-
cordance therewith, so far as might be necessary; and re-
port to the next term of the court, and return with said
report all evidence that might be adduced before him, giv-
ing said Evan Hinton ten days' notice of the time and
place that he would take the account. Under this refer-
ence the commissioner filed his report on the 6th day of
September, 1886, wherein he reports the said Mathews
debt at eleven thousand three hundred and thirty-six dol-
lars and ninety-two cents. On the 8th of September, 1886,
the cause was again recommitted to said Commissioner

Peck, with instructions to take and consider any evidence that might be adduced before him as to the debts reported by him, to show any payments or credits thereon to which the defendant Evan Hinton is entitled, and to modify his report accordingly as to him might seem right, and report to the next term of the court, giving said Evan Hinton ten days' notice of the time and place that he would take it. Under this reference the commissioner reported May 2, 1887, in which he reported the Mathews claim as follows: "Amount as of May 2nd, 1887, after deducting all credits to that date as per settlement between the parties, dated December 10th, 1880, eight thousand one hundred and forty two dollars and thirty three cents. Admitted to record December 18th, 1880." (The words, "Dated December 10th, 1880," and "Admitted to record December 18th, 1880," refer evidently to the date and recordation of the deed of trust securing said debt.)

On the 5th day of May, 1887, the cause "came on again to be heard upon the papers formerly read, the supplemental report No. 4 from Commissioner E. H. Peck, dated April 7, 1887, made pursuant to the decree rendered at the September term, 1886, to which report there is no exception, and was agreed by counsel," which decree proceeded to fix the priorities of the liens, and to provide for the sale of the various tracts of real estate of the defendant Evan Hinton. On the 15th of February, 1888, Evan Hinton, by order of the court, was allowed to file his petition in the cause asking for an order of injunction to restrain the commissioners appointed under the decree of May term, 1887, from making any sale of land under said decree until the further order of the court, and on the next day the said injunction was dissolved with costs to the commissioners. On the 1st of September, 1888, the defendant Evan Hinton, filed his bill of injunction against A. F. Mathews in his own right and as special commissioner, J. Speed Thompson in his own right and as special commissioner, and J. H. McGinnis, special commissioner, Joseph Hinton, Avis Hinton, John Hinton, A. C. Young, M. V. Calloway, sheriff of Summers county, Abram Bragg, and Russy Deeds, defendants, alleging the pendency of the said suit of Lehman, Richman & Co., against him and others. And alleg-

ing that all the liens against said Evan Hinton were set up in said cause, among others one of A. F. Mathews; that an account was taken of said debts, and the amount due said Mathews was left blank in said report until during the term time, when the amount was furnished to the commissioner by said Mathews, and the amount as stated by Mathews eight thousand one hundred and forty two dollars and thirty-three cents, was inserted during the term in said report by interlineation, and referred to said report; that said report was filed on the 5th of May, 1887, and numbered 4. And alleging that he did not justly owe said Mathews said amount ; that he had paid him large sums thereon. Further alleging that a large part of said amount was usury, and for which he was not legally re-. sponsible; and that there are other debts set up in said cause that are usurious; and that at least six thousand dollars of the indebtedness set up was usury, and plaintiff had not had ample opportunity to have said indebtedness adjusted. Alleging that no proof was taken by the commissioner as to the debt of Mathews, and that a decree was taken at the same term of court at which the amount claimed by said Mathews was inserted in said report for eight thousand one hundred and forty-two dollars and thirty three cents, without plaintiff's knowledge. Further alleging that all his lands had been advertised for sale on the 3d of September, 1888, by way of public auction; that said lands were situated near Hinton, were very valuable, and consisted of about——acres; that since the decree of sale was rendered a valuable coal mine had been discovered on said lands, also valuable iron mines, and fire clay, renderdering said lands exceedingly valuable; and that said Mathews and others were trying to force said lands to a speedy sale in order to get advantage of the appreciation in value of the same, and, if a short delay could be had, plaintiff was satisfied that an advantageous sale could be made, *etc.* Alleging, further, that the commissioners had advertised for sale land not belonging to the plaintiff, and to which he had no title, and no decree had been rendered for their sale; that certain lands owned by Augustus C. Young and Russy Deeds were included in said advertisement, and, if said lands were permitted to be sold on

the third of September, they would bring comparatively nothing, and that he was developing mines, and in a short time would have said lands on the market to sell to a great advantage, not only to the plaintiff, but to the creditors of the plaintiff; and praying that said sale be enjoined, that Mathews be made to properly prove his claim and show what part thereof is usury, and that all the usury set up against plaintiff or his sureties in said cause be disallowed, and for all such other and further relief as to equity may seem proper. An injunction was granted on the 1st of September, 1888.

On the 6th of September, 1888, the defendants Mathews Thompson, and McGinnis, by leave of the court, filed their joint answer to the bill denying the allegations thereof; and Mathews averring that said plaintiff Hinton had credit for all he claimed; and alleging that every dollar of the same mentioned in the decree in his favor was justly due and owing from Hinton, and that the amount furnished by said Mathews to the commissioner of the account was exactly that agreed upon as the correct amount by him and said Hinton in their settlement; and that this was all done, and the decree rendered, with the full knowledge and consent of said Hinton, who conferred with said Mathews about the preparation of said decree, the selection of commissioners to make the sale, *etc.*,—to which answer plaintiff replied generally. A special replication by plaintiff to said answer is copied into the record, but does not appear to have been filed in the cause, or any notice taken of it on the hearing. And on the 6th day of September, 1888, the cause came on to be heard upon the bill, answer, general replication, exhibits, and motion of the defendants to dissolve the injunction theretofore awarded the plaintiff to restrain and inhibit the sale of real estate by the plaintiffs under the decree of the court in the cause of Lehman, Richman & Co., against Evan Hinton and others, and was argued by counsel; upon consideration whereof it was adjudged, ordered, and decreed that said injunction be, and the same was, dissolved at the cost of the plaintiff, and the cause retained upon the docket. On the 7th of September, 1888, said Evan Hinton filed his amended bill, by leave of the court, and upon which process was awarded, against

the same defendants, who were defendants in the original bill, but no process was sued out thereon, and no appearance to said amended bill was entered, and the same was not considered at the hearing. The matters therein set up, not being considered by the court, are not *res judicata.*

And on the 13th of February, 1889, the following order was made: "This cause came on this the 13th day of February, 1889, to be again heard upon the papers formerly read, no process as directed having been issued or executed on the amended bill filed by the plaintiff at a former term, and said amended bill not having been matured for hearing, and was argued by counsel; upon consideration whereof the court is of opinion and decrees that the plaintiff is not entitled to any relief as prayed for in his bill, and it is therefore adjudged, ordered, and decreed that said bill be and is hereby, dismissed, and that the defendants recover from the plaintiff their costs."

On the next day another order was made as follows: "Upon motion of the plaintiff, it is adjudged, ordered and decreed that the decree made in this cause on yesterday be modified so as to show that when this cause was submitted to the court the plaintiff moved the court to refer the cause to a commissioner to ascertain whether the decree of said Mathews therein complained of was usurious, and, if so, to what extent, and said motion was overruled. Plaintiff also asked leave to file a new amended bill, but the court refused to grant such leave."

On the 19th day of February, 1889, the following order was made in the same cause: "The defendants John and Avis Hinton this day in open court tendered their joint and several answer to plaintiff's bill, and moved the court that, so far as it sets up matters for affirmative relief, it be treated as in the nature of a cross bill against their co-defendant A. F. Mathews; and further moved that the decrees made in this cause at this term of court be set aside and annulled; but the court overruled all the said motions, and refused to allow said answer to be filed, treat it as in the nature of a cross bill, or set aside said orders. And thereupon the plaintiff moved the court to set aside the orders made herein at this term of court, and that in considering said motion the said answer of said

Hintons be read as evidence in support of his said motion, but the court overruled his said motion. And thereupon the plaintiff renewed a motion made by him before the rendition of the first of said decrees, that the dismissal of the cause be without prejudice to any new suit or proceeding proper to be taken in the premises, but the court overruled his said motion." Said answer is marked "Rejected." The answer referred to in the last order, of John and Avis Hinton, in the cause of Evan Hinton against A. F. Mathews and others, nowhere appears in the record.

On the 17th of February, 1888, in the case of Lehman, Richman & Co. against Evan Hinton and others, Joseph Hinton and others, sureties on the bond of Evan Hinton, formerly sheriff of Summers county, filed their petitions. setting up the fact of their suretyship, and the pendency of said suit for the enforcement of liens upon real estate of said Evan Hinton; that accounts had been taken under direction of the court, and liens reported, and a decree of sale of real estate, and that such petitioners had paid large sums of money on the judgments reported, and that they are entitled to be substituted and subrogated to the rights and liens of said plaintiffs in said judgments in accordance with the decree, which has not yet been done; that on the 24th of November, 1875, said Evan Hinton made a deed, which was recorded on the 25th day of November, 1875, to Sylvester Upton, trustee, whereby he conveyed a large amount of personal property and of real estate sought to be subjected in said suit, and thereon already decreed to be sold, in trust to idemnify petitioners as his sureties against all loss by reason of said suretyship; that by virtue thereof they were entitled to the lien and priority thereof created by said deed to the extent that they had already paid, or might thereafter pay, any debts or liabilities upon them, growing out of said suretyship; and that they be protected in their rights.

On the 17th of February 1890, Evan Hinton was given leave to file his answer to said petition in said cause, which was accordingly done, and which answer alleged "that there is one judgment and decree set up in said cause in the name of Alexander F. Mathews against this respondent for the sum of eight thousand one hundred and

forty two dollars and forty three cents, which is set up in said cause and allowed, and the sum is utterly erroneous, incorrect, unjust, and not legal, and should be paid by neither this respondent nor his sureties, that said debt has long since been paid, although said Mathews has set the same up in this cause, and said Mathews has been and is now demanding the full amount of said judgment, and has been collecting a considerable.part thereof .from Joseph Hinton." And said answer proceeded to set up defense to said judgment as to usury, compound interest, and large payments, made principally prior to the decree of May 5th, 1887, for which Mathews had given him no credit. Joseph Hinton and Alexander F. Mathews indorsed an objection and exception to the filing of this answer, for the reason that all the matters set up therein are *res judicata* in this suit, and could only be reopened, by a bill of review or an appeal. On the 18th of February, 1890, the cause came on to be heard upon the papers theretofore read and proceedings had, the report of E. H. Peck, and the answer of Evan Hinton to the petition of the sureties of said Hinton, with the exceptions thereto, and was, argued by counsel; upon consideration whereof it was adjudged, ordered, and decreed that the cause be recommitted to Commissioner Peck to retake and restate the report theretofore directed on the petition of Joseph Hinton and others, sureties of Evan Hinton, and to retake and restate the account theretofore directed, and also an account of all the payments made by Evan Hinton on the debt of A. F. Mathews set up in this cause, and when paid, and the amount of said debt, and anything either party might require or the commissioner might deem pertinent, and report to the next term of the court, requiring notice to be given as in former decree of reference.

Under said decree of reference Commissioner Peck made his report dated April 28, 1890, making statement of the debt of Mathews, and the payments made thereon, and adopted a statement formerly made at the instance of Evan Hinton, showing the decree of Mathews overpaid, filing in support of said statement depositions of Evan Hinton, Griffith Meadows, Joseph Hinton, W. L. Redman, and G. W. Surber. None of these depositions show when

the payments made should apply, whether before or after the decree of May 5, 1887, except that of Joseph Hinton, and payments proved by him to have been made after said decree are all admitted and credited by Mathews; and the deposition of Griffith Meadows, who testifies, in relation to the Fleming Saunders land, which he says was purchased by him from Evan Hinton, that he went to see Mr. Mathews, and stated to him the contract, and he said it was all right, and the purchase money one thousand dollars was to be paid to Mathews. He says he made the purchase in July, 1887, but the sale was to relate back to May 1, 1887, and the bonds were to bear interest from May 1, 1887; that he has paid about five hundred dollars on the purchase money, he thinks but one year's rent of sixty dollars was to come out of the five hundred dollars. Evan Hinton in his deposition taken February 11, 1890, mentions several sums collected by Mathews from various debts, which he claims were not credited to him by Mathews, but some of said sums appear from his depositions to have been collected prior to said decree of May, 1887, while others are without date. The one thousand dollars of purchase money from Griffith Meadows for the Saunders land, Evan mentions as of May 1, 1887, being the date from which the amount bore interest, and it would have the effect of credit as of that date, while the contract was not made for the sale to meadows until the July following, as shown by the testimony of Meadows. So the evidence of Evan Hinton is entirely consistent with that of Meadows, which states unequivocally that he purchased the Saunders land in July, 1887, showing conclusively that the one thousand dollars payment was subsequent to the decree of May 5, 1887. The commissioner further reported specifically that Joseph Hinton and Avis Hinton, two of the sureties of said Evan Hinton, were entitled to be substituted and subrogated to the rights of the plaintiffs in the liens stated on page 2 of his said report No. 5, amounting in the aggregate to four thousand eight hundred and ninety-one dollars and forty-nine cents; and that, if A. F. Mathews' theory of the case should be held to be the correct one, the said Joseph and Avis were entitled to substitution and subrogation to the extent of payments

already made by them on Mathews' liens of five thousand three hundred dollars.

To this report Evan Hinton excepted in so far as it subrogates Joseph and Avis Hinton to the liens of the plaintiffs and A. F. Mathews; also because there was nothing to warrant the commissioner in dating the credits for the amounts of the Redman, Gore (Mike Smith farm), and Meadows and other land sales as of May 1, 1887, when the evidence shows that said sales were payments "on the decree" of May 2, 1887. Mathews also excepted to said report wherein it showed his claim overpaid; and excepted to said report as far as it adopted and renewed report No. 5, the statements therein contained, or any part of them; and excepted, further, in so far as the commissioner has allowed credit or taken into consideration any payments asserted and claimed by Evan Hinton on the amount decreed exceptant at the May term, 1887, because said decree, as between him and Hinton, is absolutely conclusive of the amount then due from Hinton to him, and excludes the consideration and allowances of any credits of an earlier date, and moreover, the order under which the commissioner is acting only authorizes, intends and contemplates the consideration and allowances of credits and payments made on said decree and since it was rendered, and as to anything else said report is *ultra vires;* for which reason also he especially excepts to the calculation and statement of the commissioner, made "at the special instance of Evan Hinton," because and so far as it allows credits on his said decree (three thousand two hundred and fifty dollars), for the reason that all said items are prior to the date of the decree, and refers to depositions taken for Hinton of Redman, Meadows, Surber, and others, establishing the dates, and these items not only come as a matter of fact, but must have been, as a conclusive presumption of law, allowed in the calculation by which the amount of said decree was determined, and cannot now be allowed again. Mathews also excepted to the deposition of Evan Hinton because the credits therein mentioned and referred to, which were sought to be set up against the decree in favor of exceptant, were all prior to the date of said decree, and must have been in-

cluded in the ascertainment of the amount thus decreed, and, at all events, these credits and the said witness Evan Hinton are absolutely concluded by said report, and consequently this deposition as to the matter and the only matter now properly before Commissioner Peck is entirely immaterial and irrelevant. Evan Hinton also filed an affidavit of James H. Miller, stating that, as counsel for said Hinton, he advised him to have a summons issued for A. F. Mathews, requiring him to appear before said commissioner, and produce certain papers in his possession concerning the payments made by said Hinton on the decree of the circuit court in favor of said Mathews against the said Hinton since its rendition; that said Mathews failed to appear in answer to said summons, and sent an *ex parte* statement or affidavit to the commissioner, which was excepted to for the reasons stated in said exceptions, and which are attached to said affidavit, directly after said statement was filed, and before the commissioner had made up his account, and while the same was pending before him; that said exceptions were made by him as counsel for Hinton, and the commissioner attached said exceptions to the affidavit of said Mathews. Hinton also filed his own affidavit that when the report was before Commissioner Peck, while still pending, he had a subpœna *duces tecum* issued and served on Mathews, requiring him to appear before said commissioner and bring certain papers, which he believed would clearly show large credits paid by said Hinton on the decree in this cause, rendered May term, 1887, in favor of Mathews, but Mathews, failed and refused to attend before said commissioner, or to produce said papers, but instead of so doing, on or about the 16th day of April, 1890, Mathews filed with said Commissioner Peck an affidavit, and as soon as filed, and while the said account was pending the affiant appeared by his attorney, and excepted to said affidavit for reasons stated in said exceptions attached thereto; that said exceptions were made and taken directly after said affidavit was filed, and before the commissioner had commenced to make up his report on said reference, and affiant states that more than five thousand dollars had been paid on the decree in favor of Mathews at said May term, 1887, against

affiant, and since the rendition thereof, for which he has received no credit by said Mathews on the————, and said papers showing said credits are in Mathews' hands. He also filed the affidavit of B. L. Hoge, clerk of the circuit court of Summers county, that he, said Hinton, had issued at two different times from his office subpœnas *duces tecum* requiring Mathews to appear before Commissioner E. H. Peck in this suit, and produce or bring before the commissioner certain papers which were set up and described in said writ, and said summonses were returned served on said Mathews. He also filed the affidavit of E. H. Peck, who stated that when the account of Lehman, Richman & Co. was before him, in 1887, to ascertain the liens against said Hinton, the amount set in favor of A. F. Mathews was left blank in the report; that he wrote to Mathews that said Evan Hinton claimed payments on his debt, and said Mathews wrote to him to leave the amount blank; that when the case came on Mathews had inserted a certain sum by agreement with Hinton, and had him (affiant) make some little change in or to the report, in accordance with the amount agreed upon, and said Mathews said he would not give Hinton all the credits then, but that the same would come in and be allowed afterwards, or words to that effect; that the exceptions to the affidavit of said Mathews were taken by Evan Hinton by his counsel, J. H. Miller, while the matter between the sureties and said Hinton was pending before affiant on the petition of the sureties, and they were made and taken before he had made any report on the matters referred to him, which had been considered by him as commisioner.

The affidavit of Mathews referred to is as follows:

"Statement of amount decreed to me against Evan Hinton in suit of Lehman, Richman & Co. *et al. vs.* Evan Hinton, *et al.*, with all payments and credits thereon: Amount of decree at May term, 1887, eight thousand one hundred and forty two dollars and thirty-three cents; with interest from May 2, 1887. Credits: Three hundred dollars paid by Jos. Hinton, June 13th, 1887; one thousand dollars paid by Jos. Hinton, Sept. 6th, 1888; one thousand three hundred dollars, amount from sale of ferry applicable to this debt, not yet paid, full and

all not due, but as it bears interest, it may be credited as of date of sale—that is September 14th, 1887; eight thousand five hundred dollars paid by Jos. or Silas Hinton, January 3rd, 1890; one thousand five hundred dollars paid by Jos. or Silas Hinton, January 7th, 1890; ninety dollars and eighty-eight cents from a payment on lands in Raleigh and Mercer, sold in this suit, applicable to this debt.

"State of West Virginia, Greenbrier County—ss: Alex. F. Mathews, having been duly sworn, says that the above is a true and correct statement of the decree in his favor against Evan Hinton in the suit of Lehman, Richman & Co. *vs.* Hinton *et al.;* rendered by the circuit court of Summers County, W. Va., at its May term, 1887, and of all payments made thereon, and of all credits to which up to this time it is entitled. Alex. F. Mathews.

"Taken, subscribed, and sworn to before me the 16th day of April, 1890. Marion Mathews, Notary Public."

The following are the exceptions to the foregoing affidavit filed by Evan Hinton: "(10) The defendant Evan Hinton excepts to the statement filed by A. F. Mathews in cause of Lehman, Richman & Co. *vs.* said Hinton *et al.,* filed before Commission Peck, because it is not a deposition, and the defendant thus had no opportunity to cross-examine the said Mathews. Said statement is entirely *ex parte,* said Mathews having refused to appear before said commissioner, or to even appear in answer to a summons duly executed by service commanding him to appear and produce certain papers as a witness. Evan Hinton, by Counsel."

Evan Hinton, with his deposition of February 11, 1890, filed before Commissioner Peck a paper marked "EEE," as follows: "In the case of Hinton *vs.* Ellis *et al.,* in Summers Circuit Court, I bought the lands therein sold, and I authorized Evan Hinton to resell said lands, and have agreed that he shall have credit on his indebtedness to me for all he can realize net from such resales, after deducting any other debts, and any costs which have to be repaid out of the funds, and any other charges for taxes or otherwise that I may hereafter pay. February 22d, 1887. [Signed] Alex. F. Mathews."

Also the following receipt, marked "I": "Evan Hinton

having heretofore assigned to me his interest acquired by purchase or otherwise in the estate of Nathan Milburn, as security upon a large debt due from him to me now this paper witnesseth that, in pursuance of said arrangement, the said Hinton has this day turned over to me the following contracts and agreements for the purchase of interests in said estate, and, after paying said heirs who have thus sold as prescribed in said contracts, the remaining net amounts to which said Hinton will be entitled are to be credited upon my said debts, it being impossible to determine and ascertain said amounts. That said agreements are as follows: One with heirs of Harrison Shumate; one with heirs of Nancy Reid; two with heirs of Sarah Hinton; one with heirs of Green Shumate; one with heirs of Mary Keller; one with heirs of Martha Lowry; one with heirs of Selina Turner; one with heirs of Sarah A. Webb; one with heirs of Isaac Milburn; one with heirs of Nancy Milburn, (widow); one with heirs of Janette Wikle and Elizabeth Roles. [Signed] Alex F. Mathews. July 25th, 1885."

These agreements mentioned in receipt marked "I" seem to be the papers for which the subpœna *duces tecum* was issued requiring defendant Mathews to produce them before the commissioner. Evan Hinton was entitled to the enforcement of the production of said papers, and the examination of the said Mathews with reference to moneys collected by him for Evan applicable to his (Mathews') decree of May 5, 1887, but he failed and neglected to avail himself of the power of the court's process to enforce his rights. Although the cause was before the commissioner from time to time, when he had ample opportunity to have done so, the laches of appellant in this cause as shown by the record, are almost without parallel in the course of my observation, and must be held as a waiver of his rights in the premises. There is no evidence taken in the cause showing any collections by Mathews on account of said agreements, or any of them, subsequent to the date of the decree of May 5, 1887, and the only item proved specifically, for which credit should have been given and was not given, is the one thousand dollars, the price of the Saunders land purchased by Griffith Meadows in July, 1887. Mathews, in his statement of April 16, 1890, upon which

the decree complained of is based, and purporting to give all the credits applicable to his debt, subsequent to the decree of May 5, 1887, ascertaining the amount then due him, fails to give credit for the one thousand dollars, the price to be paid by Griffith Meadows for the Saunders land, as shown by deposition of Meadows to have been purchased subsequent to the decree of May 5, 1887. Appellant insists that he was never. given credit for the "one thousand two hundred dollars Redman purchase, one thousand and fifty dollars Gore purchase of Smith place, and the one thousand dollars Griffith Meadows purchase of the Saunders land," but the deposition of Evan Hinton shows that the sale to Redman was made May 6, 1886, and the sale to Gore was January 26, 1887, and the presumption is that the credits were given at the date of the sales. All the other credits, claimed by appellant and specified in his deposition, were long prior to the May decree of 1887, except one thousand six hundred and forty-three dollars and eighty-eight cents, collected from Baldwin Ballard, as to which he gives no date. The exception taken to the statement of Mathews should have been sustained in so far as it failed to give the credit of one thousand dollars, the price of the Saunders land (less sixty dollars,) and the same should have been allowed as a credit on the decree for the Mathews claim. which would reduce the decree complained of to that extent.

The debt of Mathews had been reported by the commissioner four times, under as many different orders of reference, as herebefore stated: First, for ten thousand seven hundred and eighty dollars and fifty-six cents, as of September, 1885; second for eleven thousand and thirteen dollars and sixty-seven cents, as of February 18, 1886; third for eleven thousand three hundred and thirty-six dollars and ninety-two cents, as of September, 1886; and fourth for eight thousand, one hundred and forty-two dollars and thirty-three cents, as of May 2, 1887, to none of which reports had Evan Hinton made exceptions as to said claim of Mathews. The cause, on the 5th day of May, 1887, was brought on "to be heard upon the papers formerly read, the supplemental report No. 4 of Commissioner Peck, dated April 27, 1887, made pursuant to the decree rendered

at the September term, 1886, to which report there is no exception, and was agreed by counsel." This decree settled the liens and their priorities upon the real estate of Evan Hinton, and provided for sale thereof, unless the several liens should within sixty days from that date be paid by the said Hinton, and appointed commissioners to sell the property, and which decree was appealable. In *Ward* v. *Ward,* 21 W. Va., 262, it is held that "a commissioner's report made in a cause rightly referred, on the face of which no error appears, will be presumed by the court as admitted to be correct by the parties, not only so far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded, except in so far, and as to such parts thereof, as may be objected to by proper exception taken thereto before the hearing; and the court at the hearing is bound to observe this rule of equity practice." In *Keck* v. *Allender,* 37 W. Va., 201, (16 S. E. 520): "A report of a commissioner, unless excepted to in time, will be presumed to be correct, not only as to the principles of the account, but as to the evidence also." No appeal was taken from said decree of May 5, 1887, nor was there a bill of review ever filed or tendered. It is claimed by the appellant that the answer of Evan Hinton, filed to the petition of Joseph Hinton and others, securities of Evan Hinton in said cause, claiming affirmative relief, was sufficient and filed in time for the purpose of reviewing said decree of May, 1887, and was recognized as filed by a decree entered in the cause February 17, 1890, to which answer claiming affirmative relief no replication was filed, and that the court so treated it by the order of reference made on the 18th of February, 1890, by referring the cause to the commissioner, "who shall retake and restate the report heretofore directed on the petition of Joseph Hinton and others, and said commissioner shall retake and restate the account heretofore directed, and also an account of all the payments made by Evan Hinton on the debt of A. F. Mathews set up in this cause, when paid, and the amount of said debt," *etc.*; and claiming that after this reference the court was inconsistent, in the decree here appealed from, in holding "that the decree under which said commissioner was acting only authorized

and contemplated an inquiry and report as to payments and credits made upon the amount decreed in favor of said Mathews at the May term, 1887, in this cause, after, and not prior to, the date of said decree." The petition of Avis Hinton and others was filed for the purpose of securing substitution to the rights of creditors whose claims against Evan Hinton they had paid as sureties of said Evan, and to which petition Mathews was not a party, and the decree of May, 1887, could not be reviewed in that collateral way, and the court rightly held that the inquiry and report as to payments and credits made upon the Mathews debt should be made only as to those subsequent to the decree of May 5, 1887. The decree complained of must be reversed in so far only as it decrees to Mathews for the benefit of Joseph Hinton the sum of two thousand five hundred and ten dollars and seventy-two cents, as of May 7, 1890, which sum is directed to be reduced by the sum of one thousand dollars (less sixty dollars) as of May 1, 1887. In all other respects the decree is affirmed, and the cause is remanded for further proceedings to be had therein.

*Modified.*