# CHARLESTON

HOGAN, ADM'R. &C. *v.* PIGGOTT *et al.*

Submitted June 12, 1906.  Decided November 20, 1906.

| 60 | 541 |
|----|-----|
| f62 | 340 |

| 60 | 541 |
|----|-----|
| f65 | 244 |

| 60 | 541 |
|----|-----|
| e66 | 447 |
| 66 | 452 |

1. ADMINISTRATORS—*Rights as to Real Property—Insufficiency of Personalty to Pay Debts—Redemption from Tax Sale.*

The administrator of an estate, the personal property of which is insufficient to pay the debts of the decedent, by reason whereof he is empowered, by section 7 of chapter 86 of the Code, to subject the real estate of his decedent to the payment of such debts, may redeem the land, within the time allowed by section 15 of chapter 31 of the Code, from a sale thereof for non-payment of taxes. (p. 545.)

2. SAME—*Setting Aside Tax Deed.*

An administrator, under such circumstances, may, after the expiration of the redemption period, in the exercise of his power to subject the real estate of his decedent to the payment of debts, by means of a suit in equity, have an invalid tax deed to the land set aside in such suit, or in an independent suit, brought for the purpose, when the circumstances warrant the institution and maintenance thereof. (p. 545.)

3. MUNICIPAL CORPORATIONS— *Taxes— Collection—Delinquent List.*

Lists of real estate returned delinquent by collectors of cities and towns, for non-payment of municipal taxes, as authorized and provided by section 36 of chapter 47 of the Code, or a like provision in a charter specially granted to a city or town, must be certified to the clerk of the county court of the county wherein the real estate is, and, by that officer, recorded, as the lists returned by the sheriff of the county for non-payment of state taxes are recorded, and thereby made part of the proceedings of record in said office. (p. 549.)

4. SAME.

The authority conferred by section 36 of chapter 47 of the Code to sell real estate for non-payment of municipal taxes "in the same manner  *  *  *  as real estate is sold for the non- payment of state taxes," impliedly confers and imposes the power and duty to make the delinquent lists upon which such sales are founded part of the proceedings of record in the clerk's office of the county court. (p. 549.)

5. STATUTES— *Construction— General Rules.*

Where the law commands or authorizes anything to be done, it authorizes the performance of whatever may be necessary to the execution of its commands. (p. 550.)

6. SAME.

When the provision of a statute is general everything that is necessary to make it effectual is supplied by implication, and, in the interpretation of such a provision, courts must observe and adhere to the policy of the law, relating to the subject matter thereof. (p. 553.)

7. TAXATION— *Tax Deeds—Statutory Provisions—Curative Acts.*

The provisions of section 25 of chapter 31 of the Code, sustaining tax deeds, predicated upon irregular and defective proceedings, are applicable only to such defects, mistakes and irregularities as appear on the face of the proceedings of record in the office of the clerk of the county court (p. 552.)

8. MUNICIPAL CORPORATIONS— *Taxes—Tax Deeds—Curative Acts.*

The curative provisions of section 25 of chapter 31 of the Code apply to deeds, made in pursuance of sales of real estate for non-payment of city and town taxes. (p. 555.)

9. SAME— *Tax Sale—Validity—Delinquent List.*

Mere informality of the record, made by a city council of the return, acceptance and allowance of a city collector's list of delinquent real estate, will not sustain an attack upon a sale of real estate returned in said list, after a deed therefor has been executed and recorded. (p. 555.)

10. SAME.

Neither failure of a city council to direct a copy of such list to be certified to the auditor of the state, nor the certification thereof

as aforesaid, by the city clerk, without such direction, when the city charter provides that it shall be certified by the mayor, will invalidate a sale of the real estate, after the deed has been executed and recorded. (p. 555 )

11. SAME— *Tax Deed.*
  Delay of a city collector in making his return of delinquent real estate, for the period of a year after the date fixed therefor by law, will not invalidate a tax deed. (p. 555.)

12. TAXATION —*Setting Aside Tax Deed—Actions—Pleading.*
  A tax deed in the form prescribed by the statute is *prima facie* evidence of title to the land thereby conveyed in the grantee thereof, as against such persons as could have redeemed it from the sale within one year from the date thereof, and can be set aside, or its effect annulled, by such person, only by proof of a fatal defect in the proceedings, and, when the nature of the suit is such as to require a basis for the evidence in the pleadings, he must plead it. (p. 556.)

Appeal from Circuit Court, Wood County.

Action by John Hogan, administrator of the personal estate of Laura Layne, against J. T. Piggott and another. From a decree dissolving an injunction, plaintiff appeals.

*Affirmed.*

MERRICK & SMITH, for appellant.

W. E. McDOUGLE and C. T. CALDWELL, for appellees.

POFFENBARGER, JUDGE:

On the 10th day of October, 1905, the circuit court of Wood county dissolved an injunction, previously awarded to John Hogan, suing as administrator of the personal estate of Laura Layne, deceased, and as special commissioner, appointed in a certain chancery cause, on his bill against J. T. Piggott and James A. Watson and others, the object of which was to set aside a tax deed, made by the clerk of the county court of said county to said Piggott and Watson, conveying to them part of a certain lot in the city of Parkersburg, known as Lot No. 76, on Market street, pursuant to a sale thereof made by the sheriff of said county, for non-payment of city taxes thereon for the year 1899, and to restrain said Piggott and Watson from prosecuting an action of unlawful detainer for the recovery of the possession of said lot, and dismissed the bill, upon final hearing. From this decree, the plaintiff has appealed.

In the year 1899, said lot belonged to the estate of J. B. Gould, deceased, and was charged with taxes by the city of Parkersburg as the property of said estate. Later, in a chancery cause instituted by Edward McCrary, executor of the will of Gould, against Ella M. Gould and others, it was sold to John Hogan, who conveyed it to Laura Layne. In the year 1902, Laura Layne died intestate, leaving a large amount of indebtedness unpaid, and Hogan was appointed her administrator. It being necessary to sell the real estate in order to pay her debts and liabilities, the administrator instituted a chancery suit for that purpose, in which such proceedings were had that said lot was, on the 28th day of July, 1904, decreed to be sold, and the plaintiff was appointed a special commissioner to make sale thereof. After having advertised the lot for sale, he discovered that Piggott and Watson claimed it under a deed made by the clerk of the county court, pursuant to a sale of the lot made on the 12th day of July, 1903, under a return of delinquency of said lot for the city taxes thereon for the year 1899. Thereupon the court directed Hogan, as such special commissioner, not to sell under said decree, and, as administrator and special commissioner as aforesaid, to institute a suit to set aside the tax sale and deed, which was accordingly done with the result above stated.

All these facts are alleged in the bill and not denied by the answer. In response to the allegations setting them up, the respondents Piggott and Watson, say, for the most part, that they are not advised as to whether they are true or false. Such of them as are favorable to the defendants are admitted. Relying upon section 36 of chapter 125 of the Code, providing that "every material allegation of the bill not controverted by an answer * * * shall, for the purposes of the suit, be taken as true," and no proof thereof required, the plaintiff introduced no evidence to sustain the allegations not denied. If the protestations of want of knowledge of their truth had been accompanied by a general denial, it would have devolved upon the plaintiff to prove the facts, but a mere averment of want of personal knowledge is not a denial of the allegations. A general denial of all material allegations will be sufficient, if not excepted to. *Richardson* v. *Donahoe*, 16 W. Va. 686; *Warren* v. *Syme*, 7 W. Va. 475;

*Fleming* v. *Holt*, 12 W. Va. 143, 160.    This liberality in
favor of the respondent, however, does not go so far as to
enable him to put the complainant to the proof of an allega-
tion without denying it all.    *Dent.* v. *Pickens*, 53 S. E. 154.

The attempt of counsel for the appellees to sustain the de-
cree on the ground of want of power and authority, in the
plaintiff as administrator and special commissioner, to main-
tain a suit for the purpose of setting aside the tax deed makes
some of these facts very important and material.    It thus
appearing that the plaintiff's decedent, by successive convey-
ances from the Gould estate, owned the lot at the time of her
death, which occurred before the sale thereof, and that the
personal property of which she died possessed was insufficient
to pay her debts, in consequence whereof her general cred-
itors, by virtue of section 3 of chapter 86 of the Code, mak-
ing the real estate of decedent's assets for the payment of
their debts under such circumstances, could have charged
her real estate for their debts, had it not been sold, and, at
any time within one year after the sale, could have redeemed,
as persons having the right to charge the lot for debts, by
virtue of section 15 of chapter 31 of the Code, it is insisted
by counsel for the appellant that he, being authorized by
section 7 of chapter 86 of the Code to institute a suit in
equity to subject the real estate of his decedent to the pay-
ment of her general debts, has sufficient interest to entitle
him to sue for the cancellation of the tax deed which consti-
tutes a cloud upon the title, if invalid.    In a sense, he has
the right to charge the real estate of his decedent for a debt.
He sues to subject it to the payment of the debts of all the
creditors.    He does not sue on account of any debt he has
against the estate, but for the purpose of administration of
the real, as well as the personal, assets of his decedent.
Though he does not sue to charge it with his debt, he charges
it with a debt, nevertheless.    He has a double duty to per-
form, one of which is to discharge the valid indebtedness of
his decedent, and the other to resist all invalid claims against
the estate.    Though in respect to claims of the latter class
he defends and resists payment, in respect to the former he
prosecutes and charges the land.    In doing so he virtually
ties the hands of the creditors; for, after the commencement
of any such suit, if any creditor commence another, either

at law or in equity, upon any claim against the estate, no costs shall be recovered in such last mentioned suit. Section 10, chapter 86, Code. Every creditor of the decedent may present his claim against the estate in a suit brought by the administrator and upon such presentation is deemed to have been made a party to the suit and to have been served with process therein. Section 7 of chapter 86 of the Code. As the real estate is made assets for the payment of all the debts of the estate, when the personal property is insufficient to discharge them, the administrator and the heirs are necessary parties to a suit brought by a creditor, and such creditor would be compelled to sue on behalf of himself and all other creditors. *Poling* v. *Huffman*, 39 W. Va. 320; *Duval's Exrs.* v. *Trent's Devisees*, 6 Munf. 29; *Clark* v. *Webb*, 2 H. & M. 8; *White* v. *Banister*, 1 Wash. (Va.) 168; 2 Tuck. Blk. Comm. 425; Story's Eq. Pl., sections 99, 102. Hence, the same result is attained, and practically the same procedure is had, whether the suit be brought by a creditor or the administrator. In either case, it is a suit to charge the land with the payment of debts. Having the right to institute such suit and cause such disposition of the real estate, we conclude that he may, when the personal estate is insufficient to pay the debts of his decedent, redeem his decedent's real estate from a sale thereof for non-payment of taxes under section 15 of chapter 31 of the Code.

Suits to set aside void tax deeds are usually brought by the owner of the property, and there are few instances in which creditors have instituted suits for that purpose; but, as such a deed, when so defective, as to render it vulnerable to an attack, is treated as void, no reason is perceived why any person interested in the property may not, in a proper proceeding, cause it to be set aside. Since sales for nonpayment of taxes are purely statutory and the extent to which they destroy liens on the property sold and interests therein depends upon the statutory provisions relating to the subject, resort must be had to them to determine who are interested persons, not barred. When it appears from an examination of the statutes that the interests of certain persons are saved or are not barred and cut off by the proceedings, the courts must necessarily be open to them for the vindication of their rights. There must be remedies for vindication of sub-

sisting property rights.     There seems to be no provision of
the statute expressly authorizing even the owner of the land
to institute a suit to set aside a tax deed on any ground other
than that the taxes, for non-payment of which the real estate
was sold, were not in arrear.     This is found in sections 26
and 27 of chapter 31.     Nevertheless, numerous suits for the
purpose of setting aside such deeds on other grounds have
been entertained, as well as actions of ejectment in which
such deeds, when invalid, are simply ignored, as vesting no
title.     It may be that no special provision would have been
inserted in the statute relating to suits to set aside, on the
ground of non-arrearage of taxes, had it not seemed proper
to the legislature to limit the right to set them aside on such
ground and prescribe regulations concerning proof of pay-
ment.     Such suit must be brought within five years, or
when the suit is not brought for that purpose, such fact
may be proved, within five years, in any suit or action pend-
ing relative to the real estate in which the payment is not
alleged, if the person desiring to prove it, give to the
purchaser, his heirs or assigns, notice in writing of his
purpose to do so, or file such notice in the case at least thirty
days before the trial or hearing thereof.     The reference in
section 27 to the pendency of suits and actions relative to the
real estate, other than a suit brought to set aside the deed,
on the ground that the taxes had been paid and were not in
arrear, impliedly recognizes the proposition that any person
who has any interest in the land, which has not been cut off
or barred by any statutory provision, may sue to set aside
the deed.     In authorizing redemption from sale, by any per-
son having a right to charge the real estate for a debt, section
1 of chapter 31 leaves the door open to such person to assert
his interest in the property and, as against him, the deed
to the purchaser is made only *prima facie* evidence.
Section 29 of chapter 31 of the Code.     That provision reads
as follows: ''In all cases in which a question shall arise as
to any such sale or deed, or the effect thereof, such deed shall
be *prima facie* evidence against the owner or owners, legal
or equitable, of the real estate, at the time it was sold, his
or their heirs and assigns, and all other persons who might
have redeemed the same within said one year, as hereinbe-
fore provided, * * * and conclusive evidence against all

other persons that * * * the material facts therein recited are true, and that such estate as is mentioned in the twenty-fifth section of this chapter, vested in the grantee in the deed." For the position that a lien creditor, in his suit to enforce the lien agatnst the land, may set aside a void tax deed, *Columbia Finance & Trust Co.* v. *Fierbaugh*, 53 S. E. 468, is direct authority, as is also *Danser* v. *Johnson*, 25 W. Va. 380.

The grounds of attack upon the deed are irregularity in the return of delinquency. These, or some of them, are such as would, on common law principles, probably render the deed void; but if the curative provisions of section 25 of chapter 31 of the Code extend to irregularities in returns of delinquency by city collectors, the inquiry will be whether or not the defects are cured by the provisions of that section. It becomes necessary, therefore, to determine, first, whether said section is applicable to defects in such return, and, if so, second, whether the particular failures and omissions charged in this case are cured by said section.

The curative section provides that the deed, made by the clerk of the county court, pursuant to a sale for non-payment of taxes, shall vest in the grantee the title which the law makes such a deed pass, "notwithstanding any irregularity in the proceeding under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court, and be such as materially to prejudice and mislead the owner of the real estate so sold, as to what portion of his real estate was so sold, and when and for what year or years it was sold, or the name of the purchaser thereof; and not then, unless it be clearly proved to the court or jury trying the case, that but for such irregularity the former owner of such real estate would have redeemed the same under the provisions of this chapter."

Delinquent lists returned by sheriffs and relating to state, county and district taxes on real estate must be recorded by the clerk of the county court "in a well bound book to be kept by him for the purpose." Chapter 30, section 21, Code. Such a list becomes a part of the "proceedings of record in the office of the clerk of the county court." The law makes no such express provision concerning city collector's list of

delinquent real estate.   Section 36 of chapter 47 of the Code, relating generally to cities, towns and villages, contains this provision:   "If any real estate within such city, town or village be returned delinquent for the non-payment of the taxes thereon, a copy of such delinquent list may be certified by the council to the auditor, and may be sold for the taxes, interest and commissions thereon, in the same manner, at the same time and by the same officer as real estate is sold for the non-payment of state taxes."   The special charter of the city of Parkersburg, in force when this return was made, contained a similar provision; the only modification being that the return should be made by the collector in such manner as the council of the city might prescribe and that a copy thereof might be certified by the mayor of the city to the auditor.   In neither case, was there express direction that the list be returned to, or recorded in, the office of the clerk of the county court.

At a later step in the proceedings relating to sale for delinquency as to city taxes a record is made in the clerk's office of the county court, by express statutory requirement, but it is the record of the sale, not of the return of delinquency.   After city delinquencies have been certified to the auditor, he puts the delinquent city real estate in the same list for sale with the land returned by the county collector, and, if there be state, county, district and city taxes due on a given parcel of land, he makes one entry in the list on accounty of it, charging all the taxes therein, and the sheriff makes one sale of that piece of property for all the taxes.   If the only taxes due are city taxes, the land is entered in the auditor's list to the sheriff with the city taxes only charged, and the sale is made by the sheriff although there are no state, county or district taxes as to which it is delinquent. After completing the sale, the sheriff makes a list of all the sales and returns it to the office of the clerk of the county court in which it is recorded in a book kept for that purpose, and thereby becomes part of the "proceedings of record."

As to so much of the proceedings relating to the sale of real estate, delinquent in respect to city taxes, as becomes part of the proceedings of record in the clerk's office of the county court, the provisions of section 25 of chapter 31 must apply, unless we can say, contrary to the letter of the statute,

such sales are not within its spirit. No reason is perceived upon which such a conclusion could be based. The reasons assigned for the action of the legislature, in guarding against the invalidation of tax deeds, by passing curative statutes, while perhaps not so forceful in the case of sales for non-payment of city taxes as in the case of sales for non-payment of state taxes, are nevertheless sound and beneficial to the public in their results, and not unreasonably burdensome to the owners of property. It was certainly the intention of the legislature to make the remedy in the hands of municipal corporations for the collection of taxes by sales of real estate efficacious, and it has been the experience of the state that, without provisions upholding the deeds against irregularities, such sales have proved to be mere delusions and snares to purchasers.

The crucial question is whether, in contemplation of law, city collectors' lists of delinquent real estate are parts of the proceedings of record in the clerk's office of the county court. In other words, does the law require recordation of them in said office? There is no express direction in the statute to the city clerk, mayor or council to certify copies thereof to the clerk of the county court, or to the clerk of the county court to record them; but the legislature may nevertheless have so intended and its intent may be made manifest by some language it has used when interpreted in the light of the spirit of the statutory system relating to taxation and land titles.

Authority granted by the legislature to municipal corporations to sell real estate for non-payment of municipal taxes thereon, is power to change the status and ownership of land titles. For the protection of creditors and purchasers, a system of registration of the muniments of titles and proceedings affecting them has been devised and put into operation, and that registration takes the form of recordation, in the clerks' offices of the county courts, of all deeds, wills, liens and other documents by which alienations are made, lands encumbered and titles affected or impaired. It has been wisely ordained that, for such purpose, there shall be but one such place in each county. Since the returns of real estate as delinquent for non-payment of taxes, by county collectors, become the basis of sales thereof, the legislature

has required them to be made part of the "proceedings of
record" in said office, so that the owners and other interested
persons may have notice.   As a city collector's list consti-
tutes a like basis, there is reason, equally cogent for requir-
ing it to be recorded in the same place, but, as we have seen,
there is is no express direction to record it there, nor, indeed,
anywhere.   What the city council shall do with it, after for-
warding a copy thereof to thé auditor, is to be ascertained
by interpretation or construction of the statute.   That no
record is to be made, for the purposes of notice, is not to be
assumed, or accepted, merely because of the lack of direc-
tion; for failure to record it is contrary to the manifest
policy of the law.   Loss of property by sale for city taxes
is equal in seriousness and injury to. loss of it by sale for
state taxes.   Hencè, notice of the proceeding is equally
important and essential in the two cases.   Since conven-
ience and certainty demand that all documents, relat-
ing to and affecting land titles, shall be recorded in one place,
it is not to be assumed that the legislature intended to make
an exception in the case of city collectors' delinquent lists.

Nor is it to be assumed that the legislature intended to
make its curative statute applicable to part of the proceed-
ings relating to the sale of real estate for non-payment of city
taxes, and not applicable to other parts of the same.  Rea-
sons have been given for the conclusion that the sheriff's
list of sales for city tax delinquency becomes part of the
proceedings of record in the clerk's office of the county court,
and is subject to the operation of the curative statutes.  It is
not returned by the sheriff elsewhere than to said clerk's
office.   Being so returned and recorded there, it is, tested by
the letter of the statute, part of said proceedings.   The rea-
sons which impelled the legislature to make it · so ought to
have produced a like result in the case of the delinquent
list.   Otherwise inconsistency on the part of the legislature
would be obvious.   It could only be explained on the theory
of in inadvertency or an intention to make the remedy prac-
tically useless in the hands of municipal corporations.   Such
a conclusion cannot be adopted otherwise than as a last and
inevitable resort.

It is to be observed also that section 25 of chapter 31 of
the Code, a statute applicable to tax deeds generally, no

matter for what taxes sold, inhibits the setting aside of such a deed for any irregularity, not therein provided for, unless it "appear on the face of the proceedings of record in the office of the clerk of the county court." If we say a city collector's list is no part of such proceedings, the letter of the statute forbids the setting aside of the deed for any defect in it. The legislature never intended a thing so ruinous to property owners and disregardful of their rights. We are bound to say it either intended to make such lists part of the recorded proceedings or that it did not intend that said section should apply to sales for such delinquency.

Giving due effect to the general policy of the law as just stated, we must ascertain from the very general, and somewhat indefinite, language of the clause quoted from section 36 of chapter 47 of the Code, what the legislature intended. It does not in terms direct or require the preparation or return of any delinquent list, but it assumes that such returns will be made and such lists prepared, and authorizes sales based thereon. This necessarily gives, by implication, the power to so return real estate and make the lists. It does not define a delinquent list nor prescribe the requisites thereof. In order to determine what a delinquent list is within its meaning, it must be connected, in some way, with other statutes which do define delinquent lists, and prescribe the form thereof. There is no express directions in it to the clerk of the county court or any other officer to make a deed, conveying real estate sold for such delinquency; and yet his authority to make such deed cannot be doubted. It must be found in this statute, taken in connection with the statutes relating generally to sales of delinquent lands. The necessity of giving this provision a broad and liberal construction and reading into it, by implication, many of the provisions of the general statute, is thus clearly apparent. How far can this process be carried? As far as may be necessary to effectuate the manifest intent of the legislature. Is there any language in the provision itself which seems to authorize recordation of the delinquent list in the office of the clerk of the county court? It says: "The same may be sold for the taxes, interest and commissions thereon, in the same manner, at the same time and by the same officer as real

estate is sold for the non-payment of state taxes." Sales for state taxes must be based upon a recorded delinquent list, and a recorded list of sales, and they are not consummated so as to vest title, until the execution and recordation of deeds, by the clerk of the county court. Sales of lands delinquent for the non-payment of city taxes, to be made in the same manner, must be based upon the same kind of record. Hence there must be somewhere a recorded delinquent list. In requiring this, the legislature necessarily granted the power to accomplish it. Not having done so in express terms, it must have done it by implication. Nothing in section 36 of chapter 47 of the Code, or in the charter of the city of Parkersburg, requires or authorizes any such record to be made in the office of the city clerk. Hence, these statutes are not inconsistent with the view that it may be made in the clerk's office of the county court of the county in which the real estate is; and, though there is no express direction to the council, city clerk, or other officer to deliver the delinquent list to the clerk of the county court for record, or certify to him a copy thereof, for that purpose, nor to the clerk, to receive and record the same, as he does other delinquent lists, the want of such directions presents no obstacle to the fulfillment of the mandate of the law, that such record shall be made in the clerk's office of the county court, to the end that the sale shall be made in the same manner as sales of land for non-payment of state taxes are made, and have the same guarantee of validity, and the owner of the property and other interested persons, the same protection by notice of the proceedings. Both the authority and the duty are impliedly conferred and imposed by the statute. "Wherever the provision of a statute is general everything which is necessary to make such provision effectual is supplied by the comman law and by implication." Lewis' Suth. Stat. Con. 504. "Wherever power is given by a statute, everything necessary to make it effectual or requisite to attain the end is implied." *Id.* 508. "Where the law commands anything to be done, it authorizes the performance of whatever may be necessary for executing its commands." *Id.* 508.

The first ground of attack upon the deed is, in substance,

that no delinquent list was ever made up and returned as to the taxes for the year 1899. The charter of the city of Parkersburg provides that the delinquent list shall be made up and returned in such manner as the council may, by ordinance, prescribe. An ordinance of the city directs the preparation and return of such list, on or before the 30th day of June in the year next succeeding the year for which the delinquent taxes are assessed, and requires an examination of the list, before presentation to the council, by the committee on finance. When approved by the council, upon the favorable report of said committee, the council shall direct the clerk to certify a copy of the list to the auditor of the State. The only record relied upon as showing any return of a delinquent list to the council reads as follows: "Mr. Boreman of the Finance Committee presented delinquent personal property tickets for the same year 1899 amounting to $5,304.53 and real estate tickets for the same year amounting to $317.72 and moved that the ex-collector, E. O. Hiehle, be allowed credit for the total amount, $5,623.25. Motion carried. All members voting aye, none voting no." A book kept by the clerk in which delinquent lists are recorded, pursuant to an ordinance of the city, shows the recordation of the real estate delinquent list for the year 1899, returned by the collector named in the order, and in that list, appears the lot in question. The order is brief and informal, omitting any reference to the list, but giving credit for the taxes shown on it. It also fails to show that any formal report was made by the committee on finance, recommending the allowance of such credit, or that the council examined the list and approved it. Neither does it show that any order was entered directing the clerk to certify the list to the auditor. Notwithstanding all these omissions and informalities, the action of the council amounted to an approval and acceptance of the list, for it gave credit to the collector for the amount of the taxes set forth therein, and predicated that credit on the ground of delinquency as to said taxes. Moreover, to the list in which all of the taxes so credited were shown, the collector had appended an affidavit, such, in form and effect, as the law required a sheriff to annex to his delinquent list. The order shows, too, that the tax tickets were presented by a member of the finance committee, a

fact which gives rise to the presumption that that committee had acted upon the list. We think that, under the rule of presumption in favor of the regularity of the acts and proceedings of public officers, when the contrary does not appear, it must be assumed that the list was examined, and that it was the intention of the council to accept it, and that that body, by means of the informal order put upon its record, sufficiently expressed that intention.

The second objection is that the list was certified to the auditor of the state by the city clerk, without any direction from the council to so certify it. Although the charter of the city, in force at the time the list was certified to the auditor, required the certificate to be made by the mayor, it seems that an ordinance of the city required the clerk to do so by direction of the council. This was not in conformity with the charter, nor was there any direction to the clerk, if it had been, to make the certificate. Counsel for the appellant insist that this certificate was made without authority, and is, therefore, void. Since both the law and the ordinance of the city contemplated and authorized such certificate to be made, and there was no departure except in respect to the officer who made it, it is by no means clear, that, although void when tested by the law, such certificate will not, under the operation of the curative provisions of the statute, sustain the tax deed. Many very grave defects and irregularities have been held by this Court to be insufficient to overthrow a tax sale after the deed has been made. Such sales have been upheld, under such circumstances, despite the positive and emphatic declaration of the legislature that a certain omission of duty on the part of an officer should render the sale absolutely void. *State* v. *McEldowney*, 55 W. Va. 1; *Winning* v. *Eakin*, 44 W. Va. 18; *Boggess* v. *Scott*, 48 W. Va. 316. In view of the the virtue and power thus accorded to the curative statutes, and the conclusion that they are applicable to sales of real estate for delinquency as to the city taxes, we conclude that this irregularity is not sufficient to invalidate the deed.

The last objection is the delay of one year in making and certifying the return of delinquency. Under the principles declared by this Court in *Imboden* v. *Hornage*, 57

W. Va. 206, the curative statutes render this ground of attack untenable also. It may be that the delay misled the parties interested, but this is not enough to invalidate a sale after the deed has been made. It is, according to the decision above cited, an irregularity in the return of the delinquent list, and the statute declares that no such irregularity shall, after the deed is made, invalidate or affect the sale or deed. It suffices that a delinquent list has been returned, is in existence and has been recorded in the proper place, no matter how informal and defective the list itself, the return or the recordation thereof may be. This is not true of all defects and irregularities, but only of such as fall under the operation of the provisions of section 25 of chapter 31 of the Code. There are some that do not, but this one does.

As to whether the delinquent list was ever recorded in the the clerk's office of the county court, the bill is silent. For aught that the Court can see, it was so recorded. However, as a matter of fact, it may not have been and probably was not. But the bill does not attack the deed on the ground of the want of such recordation. The deed is *prima facie* evidence that the material facts therein recited are true and that such estate as is mentioned in the twenty-fifth section of chapter 31 of the Code vested in the grantee. While the deed is not conclusive evidence of such facts or the vesting of such estate, and may be contradicted and overthrown, it casts upon the plaintiff the burden of showing wherein it is false and contradicting by proof the recitals thereof and the presumption of title in the grantee. It is the uniform practice in this State, to charge, by the bill, the particular defect or failure of duty upon which the plaintiff relies as cause of impeachment, when he attacks the deed in equity, and of course, he must sustain the allegation by proof. When the validity of the deed comes in question in an action of ejectment, the defect is not specially averred in any pleading, but it must be proved, else the deed will control. *Duquasie* v. *Harris*, 16 W. Va. 345. In *Mosser* v. *Moore*, 56 W. Va. 478, 482, JUDGE BRANNON, speaking for the Court, said: "Likely, as the deed recites the lots were delinquent and sold, we have to say that some delinquent list and sale list was made and

filed, as the Code, section 29, chapter 31 makes it *prima facie* evidence of its recitals." In *Dequasie* v. *Harris*, cited, JUDGE GREEN said: "Under the twenty-ninth section the deed itself in this case would be *prima facie* evidence of all the material facts cited in this deed. This deed is therefore valid and operative, unless this *prima facie* evidence of its validity is rebutted by showing that the material facts recited in it are contradicted by the material facts with relation to the sale appearing in the clerk's office which ought by the law to be recited in the deed." There is no allegation in the bill that the delinquent list is not recorded in the clerk's office of the county court of Wood county, nor does it appear from the evidence. Neither the bill nor the evidence goes further than the city clerk's office. Therefore, we are not called upon to say what effect it would have if it were alleged and proved.

For the reasons stated, the decree complained of will be affirmed.

*Affirmed.*

BRANNON, JUDGE, (*dissenting:*)

I cannot agree that delinquent lists of municipal taxes must be certified to the county clerk's office.