# WHEELING.

## DANSER v. JOHNSONS.

Submitted June 12, 1884.—Decided December 13, 1884.

*(JOHNSON, PRESIDENT, Absent.)

1. At a tax-sale a husband purchases a tract of land in the name of and for his wife with money derived from her separate estate; he is his wife's general agent for the management of her separate estate and the transaction of her business under a general authority from her; within one year after such sale a creditor of the person, in whose name the land was sold, goes to the husband and offers to pay him the amount necessary to redeem the land and has the money to do so, and also hands to him a receipt to sign for the money; the husband takes the receipt, looks at it and hands it back, stating that he will not sign it as he does not know that such creditor has a right to redeem the land, but does not intimate that he has no authority to receive the money and sign the receipt; subsequently and before the expiration of one year, such creditor deposits the money with the clerk of the county court of

*Related to some of the parties.

the proper county, and takes his official receipt therefor as pre-scribed in section 16 of chapter 117, Acts 1872–3. HELD :

I  The offer to pay the redemption money to the husband was, under the circumstances, a sufficient offer, and his refusal to receive it entitled the creditor to pay the same to the clerk. (p. 385.)

II. The husband being, admittedly, not only the general agent of his wife but having made the tax-purchase for her, the creditor had the legal right to regard and treat him as her agent to receive and receipt for the money in redemption of said land ; and if he had no authority in fact to act in that particular matter, it was his duty to so inform the person of-fering to redeem, and his failure to do so will make his act binding upon his principal.   (p. 386.)

2. Statutes authorizing the redemption of lands sold for taxes are to be liberally construed in favor of persons entitled to redeem. (p. 385.)

The facts of the cases are stated in the opinion of the Court.

*David D. Johnson* for appellants.

*J. N. McKnight* and *D. F. Pugh* for appellees.

SNYDER, JUDGE :

I. H. Johnson, on April 23, 1870, executed to Rebecca, the wife of Jacob Nelson, his two notes for $200.00 and $113.63, respectively, as a part of the consideration for a tract or lot of about three acres of land situated in the town of Shiloh in Tyler county, the first of said notes due at six months and the other two years and six months after date. By deed dated December 7, 1870, said I. H. Johnson, D. D. Johnson and Samuel Johnson, partners as Johnson Brothers, conveyed to Zenas Martin, trustee, their real and personal estate to secure the payment of their debts and, among other property, the said I. H. Johnson conveyed therein to said trustee the aforesaid lot of three acres of land subject to the payment of said two notes due to Rebecca Nelson. Subse-quently, the said Rebecca assigned said notes to her husband and he assigned the same to Jesse A. Dancer. The said land having been returned delinquent in the name of I. H. Johnson for the non-payment of taxes for the year 1876, the

sheriff, on October 22, 1877, sold the same for said taxes and D. D. Johnson purchased the land as agent for and in the name of his wife, M. M. Johnson, and after the expiration of one year he had a commissioner appointed by the court who made a deed to his wife for said land which was duly recorded, the clerk having refused to make such deed on the ground that the land had been redeemed.

In a suit, afterwards brought in the circuit court of Tyler county by Greer & Laing against said Johnson Brothers and others, a decree was entered, May 20, 1880 in which it was ordered and decreed that Martha Dancer, executrix of said Jesse A. Dancer, deceased, assignee of Jacob Nelson, recover against said I. II. Johnson $472.86 with interest thereon from the date of the decree, the amount of the two notes aforesaid, the decree stating, that said debt constituted a preferred lien on said three acres of land which the said Martha Dancer as such executrix is entitled to have enforced; and the decree then stating, that it appearing to the court that said land had been sold for taxes and that "M. M. Johnson by her agent D. D. Johnson became the purchaser of the same, and the said Martha Dancer, executrix &c., desiring to contest the validity of said tax-sale, further proceedings in this cause are held over until such time as the validity of said tax-sale may be determined."

Thereupon, in September, 1880, the said Martha Danser, executrix as aforesaid, exhibited her bill in court against said D. D. Johnson and M. M. Johnson, his wife, for the purpose of having said tax-sale and the deed made thereunder to said M. M. Johnson, set aside and declared void.

The bill assails said sale and tax-deed on several grounds, but it is deemed unnecessary to notice more than one of them. It is alleged in the bill, that within less than one year from the date of said tax-sale the plaintiff, as a creditor of said I. II. Johnson and having a lien on said land for her debt, tendered to the defendant, D. D. Johnson, as the agent of and for his wife the full amount paid for said land at the tax-sale, together with the interest thereon at twelve *per cent. per annum*, which amount the said defendant refused to receive or receipt for on the ground, as he alleged, that the plaintiff had no right to redeem said land; and that after such refusal, to-

wit, on October 9, 1878, the plaintiff paid said amount, $4.00, to the clerk of the county court of said county in redemption of said land and took his official receipt therefor in pursuance of section 16, chapter 117, Acts of 1872–3. The plaintiff then avers that the tax-deed thereafter made to said M. M. Johnson for said land was illegal and void and prays that the same may be set aside, &c.

The demurrer of the defendants to the bill having been overruled, they filed separate answers, by which they severally deny that any tender was made or that the land was in fact redeemed. They also deny that an offer to pay or a tender of the taxes to D. D. Johnson was binding upon the defendant M. M. Johnson, because the former was not the agent of the latter in respect to that matter, nor was he authorized to receive or receipt for said taxes. The said D. D. Johnson admits that the agent of the plaintiff offered to pay him the money to redeem the land if he would sign a receipt therefor which was handed to him, but says that he declined to receive the money or sign the receipt on the ground that he was not the purchaser and had no deed for the land.

There was a general replication to the answers, depositions were taken by both sides and the cause was finally heard, August 10, 1881, when the court entered a decree vacating and setting aside said tax-sale and deed and referring the cause to a commissioner to report the amount paid for the land at the tax-sale, the taxes since paid by the purchaser, and the rents and profits of the land. From this decree the defendants appealed.

I. N. McKnight testifies that he is an attorney-at-law, and was employed to collect the aforesaid debt due from I. H. Johnson to the estate of Jesse A. Danser, deceased; that early in September, 1878, he advised the plaintiff who was executrix of said estate to send the exact amount required to redeem said three acres of land to M. M. Johhson and have her and her husband sign a receipt showing such redemption, and that afterwards he made a calculation of said amount and wrote such receipt and handed it to the plaintiff.

The plaintiff testifies that on September 21, 1878, she handed her son, David Danser, $4.05, also the receipt prepared by I. N. McKnight, and instructed him to pay said

money to M. M. Johnson and get her and her husband to sign said receipt. The said David testifies, that instead of going himself, he handed said money and receipt to Lewis Holmes, and the said Holmes testifies that he took the receipt and the money and went to the house of D. D. Johnson and told him that he wanted to see Mrs. M. M. Johnson; that he had some money for her and a receipt that he was requested to get her to sign. D. D. Johnson asked for and he gave him the receipt; he looked over it and witness showed him the money, and he said it was no use for witness to see Mrs. Johnson for he would not sign the receipt and Mrs. Johnson should not sign it; that they would not accept the money, for Martha Danser had no right to redeem that property.

D. Hickman testifies that he is and has been since 1872 clerk of the county court of Tyler county; that the records of his office show that the land in controversy was sold for taxes on October 22, 1877, and purchased by M. M. Johnson; that the plaintiff on October 9, 1878, left in his possession for the redemption of said land $4.00, and he gave to her his official receipt; (this receipt is exhibited and is such as required by section 16 of chapter 117, Acts 1872–3;) that soon after October 22, 1878, D. D. Johnson requested witness as clerk to make a deed to the tax-purchaser for said land which he declined to do because the land had been redeemed by the plaintiff and a receipt to that effect had been filed in his office.

The defendant, M. M. Johnson, testifies that she authorized her husband to purchase said land for her and furnished him the money to pay for it; that no offer to redeem it was ever made to her; that Lewis Holmes came to their house in September, 1878, but did not speak to her; that she never authorized her husband to receive money in redemption of said land. She admits on cross-examination that her husband purchased the land and obtained the deed to it for her, and that he managed her separate estate and acted generally as her agent.

The defendant, D. D. Johnson, in his deposition says "that sometime in September, 1878, Lewis Holmes came to my house and informed me that Mrs. Danser had sent him to me to redeem a tract of land; that she had also sent a receipt

for the money which she desired that I should sign. He handed me the receipt saying that if I would sign it he would pay me the money.    I declined to sign the receipt and handed it back to him, informing him that I would not sign it, and without offering me any money whatever, he left the room and the premises." He also says, " I did not tell Lewis Holmes that they (we) could not accept the money for Martha Danser could not or had no right to redeem that property; but I did say to him, in view of the fact that the heirs were at that time contesting the will of Jesse A. Danser, that I did not know whether Mrs. Danser had a right to redeem the land or not, but this was not my reason for refusing to sign the receipt." Witness admits that several attempts were made between him and plaintiff's counsel to settle the contest about this tax-sale and deed, but that he had never been instructed by his wife to make such settlement. He also states that he acted as her agent upon general authority, but that he never makes contracts or purchases outside of the regular business of managing the farm or manufacturing and selling staves unless specially authorized to do so by his wife in each case.

The foregoing is the substance of all the evidence in regard to the redemption of said land and it seems to me, that it fully sustains the allegations of the ·bill that said land was redeemed within the one year allowed by law for such redemption after the sale, provided the offer of the money to D. D. Johnson under the circumstances was a sufficient offer to his wife, the nominal purchaser; and also provided the plaintiff had, under the statute, a right to redeem.

It is a well established rule that statutes authorizing the redemption of lands sold for taxes are to be construed liberally in favor of the persons entitled to redeem. *Dubois* v. *Heplum*, 10 Pet. 1; *Rice* v. *Nelson*, 27 Iowa 148; Cooley on Tax. 363.

Our statute provides that the owner " or any person having a right to charge such real estate for a debt, may redeem the same," &c. Section 15, chapter 117, Acts 1872–3. In this case, therefore, no question can arise as to the right of the plaintiff, under the statutes, to redeem; the only question is as to whether there was such an offer of the amount

of the taxes to Mrs. Johnson and refusal to receive the same by her as entitled the plaintiff to pay the said taxes to the clerk of the county court under the provisions of section sixteen of said statute. This section provides, that the redemption money may be paid to the clerk "in any case in which the purchaser, his heirs or assigns, may refuse to receive the same," &c. From the testimony in this case we think there can be no doubt that D. D. Johnson was the agent of his wife in this whole transaction as well as her general agent in all her business. The purchase of the land, the payment of the money, the application for the deed, the obtaining of the deed by proceedings before the court and in fact, every transaction connected with the purchase of the land and procurement of the deed, was done by him as the agent for his wife. In the face of these facts, it is immaterial whether or not he had any special authority from his wife to receive and receipt for the redemption-money, or that he was even instructed by his wife privately not to receive it. He was held out to the world not only as the general agent of his wife but as her agent in the conduct of this particular matter. Mrs. Danser had the legal right so to regard and treat him until she had notice to the contrary. Story on Ag. sections 71, 88 and 56.

It is not claimed that when Holmes offered him the money in this case the husband informed him that he was not authorized by his wife to receive it or sign the receipt, but on the contrary, he testifies, himself, that he had a different reason and intimated to Holmes that Mrs. Danser had no right to redeem the land, thus instead of notifying Holmes of his alleged want of authority, as it was his duty to do under the circumstances if he in fact had no such authority, he rests his refusal on another ground by which he impliedly admitted his authority and thereby misled Holmes and obviated any necessity for enquiring into his authority. I am, therefore of opinion that the offer of the money to the husband was a sufficient compliance with the statute to entitle the plaintiff to pay the redemption-money to the clerk as he did, and that the land was in fact redeemed on October 9, 1878, within less than one year from the date of the sale. From this it follows necessarily that the deed for said land

made April 7, 1870, by Dave. D. Johnson, commissioner, to M. M. Johnson was void and the circuit court did not err in so decreeing.

The demurrer was properly overruled. It is fully settled in this State that a court of equity has jurisdiction to set aside a void tax-deed. *Simpson* v. *Edmiston*, 23 W. Va. 675.

This is not a bill to sell the land but it is merely an auxiliary or collateral suit to remove a cloud from the title in order that the sale may be made without sacrifice or embarrassment in the pending suit of *Greer & Laing* v. *Johnson Brothers et al.*, by which this suit was authorized; and, therefore, it was unnecessary, that I. H. Johnson, the owner of the land, or his trustee or creditors should have been made parties.

But so much of the decree as refers the cause to a commissioner with instructions to report as therein directed, is erroneous. The land having been legally redeemed by the deposit of the redemption-money with the clerk of the county court, the tax-purchaser is entitled to that sum and nothing more. *Simpson* v. *Edmiston*, 23 W. Va. 675. And this being a suit simply for the setting aside of said tax-deed by a lien-creditor, he has no right to the rents and profits of the land; these could only be recovered by the owner of the land or his trustee, and neither of them is a party to this suit.

I am of opinion, therefore, that said decree, so far as it refers the cause to a commissionor to report the matters therein directed, must be reversed, and that in all other respects it must be affirmed with costs to the appellee, she being the party substantially prevailing.

AFFIRMED.