# CHARLESTON.

Dingess *et al. v.* Marcum *et al.*

Submitted January 18, 1896—Decided March 28, 1896.

1. Bill of Review—Final Decree.

   It is necessary that a final decree should have been rendered in the cause which is sought to be reviewed, before a bill to review the same will be entertained.

2. Bill of Review—Discovery of New Matter.

   The causes for which a bill of review may be maintained are limited as follows: (1) There must be error in law apparent on the face of the decree; or (2) the party seeking to review the decree must allege and prove the discovery of new matter, which could not have been used at the time of making the decree, in consequence of the party's ignorance that such matter existed.

3. **BILL OF REVIEW—REASONABLE DILIGENCE.**

  The matter relied on must not only be new, but it must be such as the party, by the use of reasonable diligence, could not have known.

4. **PARTITION OF LAND—IMPLIED WARRANTY.**

  In partition of land a warranty is implied, because of the privity of the estate. Upon partition the parties are in *æquali jure.* There is supposed to be mutual confidence, by reason of the privity of estate, and if the common fund is not so large as the parties suppose, either from defect of title, or of unsoundness as to part, the loss should be borne equally.

5. **PARTITION OF LAND.**

  It is the duty of the court, through its commissioners, to ascertain what estate exists, before proceeding to make a partition of the same, or confirming such partition.

J. S. CLARK and C. M. TURLEY for appellants, cited 8 W. Va. 174; 10 W. Va. 298; 12 W. Va. 371; 32 W. Va. 195, 335, 556; 33 W. Va. 426; 35 W. Va. 36; 37 W. Va. 355; 40 W. Va. 337, 349; 32 Gratt. 657; 75 Va. 563; 77 Va. 600; 88 Va. 149; 20 S. E. Rep. 899; 22 S. E. Rep. 516; 4 Gratt. 348; 152 Mass. 136; 5 N. H. 329; 17 Am. & Eng. Enc. Law, 778, 784, 811; 3 S. & R. (Pa.) 534; 3 P. &. W. (Pa.) 505; 18 Pa. 374; 96 Pa. 61; 5 Munf. 108.

H. K. SHUMATE for appellees, cited Sto. Eq. Jur. §§ 404, 412, 413, 414; Bart. Ch. Prac. 336; 21 Gratt. 241, 245; 8 W. Va. 174, 182; 12 W. Va. 393; 37 W. Va. 208, 210; 10 W. Va. 145; 32 W. Va. 335; 32 Gratt. 657; 77 Va. 600; 78 Va. 413; 75 Va. 563; Code, c. 79, s. 1.

ENGLISH, JUDGE:

At the July rules, 1891, held for the Circuit Court of Logan county, Sylvanus Dingess and Jane Dingess, his wife, brought a suit in equity against the widow and heirs of Gideon Marcum, deceased, for the partition of the real estate of which said Gideon Marcum died seised and possessed, among the several children and heirs at law of said Marcum. The land was to be partitioned among eleven heirs, or those holding under them, respectively.

E. W. Clark, W. W. Justice, and Samuel Chauvenet, trustees, were the owners of two shares of said lands, and filed their petition alleging that fact, and praying that their

two shares be laid off together, and adjoining their own lands, which was done by commissioners appointed to make said partition, which action was confirmed, without exception or objection.

After said partition was decreed, and deeds made to the respective parties to whom the parcels of land had been set apart and allotted by the commissioners, E. W. Clark, Jos. I. Doran, and Saban W. Colton, Jr., filed a bill of review, making the parties to the original bill defendants. In said bill of review said plaintiffs, among other things, allege that they are the owners of large boundaries of land situated in Logan county, W. Va., and that they hold said lands as trustees for certain stockholders, to them unknown, and have full power and authority to prosecute and defend all suits and all proceedings respecting the subject-matter of their trust as fully and effectually as if the *cestuis que trustent* were made parties in any proceeding affecting the lands which they hold as trustees; that as such trustees they purchased the interests of Malinda Bailey and Jane Dingess in and to all the lands of which Gideon Marcum died seised, which lands are situated mainly in the county of Logan; that, at the time said purchase was made, one W. W. Justice and Samuel H. Chauvenet were connected as trustees with the said E. W. Clark, but that, since said purchase was made, S. W. Colton and Jos. I. Doran have been duly substituted as trustees in the place of said W. W. Justice and Samuel H. Chauvenet, and all the lands and rights and interests which were owned by the said Clark, Justice, and Chauvenet, trustees, have been duly conveyed and transferred from said Clark, Justice, and Chauvenet, trustees, to said Clark, Colton, and Doran, trustees, including the above mentioned lands and interests purchased of Jane Dingess and Malinda Bailey, which represent two interests or two shares of the Gideon Marcum estate as aforesaid; that one Sylvanus Dingess, who was the husband of Jane Dingess, at July rules, 1891, instituted in the circuit court of Logan county a suit in chancery against the widow and heirs of Gideon Marcum, deceased, for the partition of the real estate of which the said Gideon Marcum died seised. And the plaintiffs proceed to set forth said or-

iginal bill in substance, together with the answers, petitions, and proceedings had therein, including the report of the commissioners appointed to partition the land, and the final decree making partition of said land among the respective parties, and directing deeds to be made to the respective parties.

The plaintiffs, in the bill of review, further say that since the entering of said last named decree, on the 20th day of January, 1893, S. S. Vinson and others conveyed by deed all their right, title, and interest in and to their interest as laid off to them in said land to the Logan Cannel Coal Company, a corporation, as shown by a copy of the deed filed therewith; that all the land laid off to S. S. Vinson was wild land, and its chief value consisted in the valuable timber standing thereon, and that said Logan Cannel Coal Company has since cut and removed all of the valuable timber from the land, amounting to several thousand dollars, which should be taken and considered in any partition of said lands; that said decree confirming said report gives to plaintiffs a tract of land which purports to be of about 109 7-10—105 acres on the east side of Twelve Pole, adjoining other land owned by the plaintiffs near the Gideon D. Marcum homestead, and also another tract of 115—110 acres in Wayne county, known as the "Kelley Place"; that since said partition was made, and since the report of the commissioners was confirmed, and since the decree has been passed directing deeds to be made to each for their respective interests, they have had the 109 7-10—105 acre-tract surveyed, and in making said survey the plaintiffs have discovered that there are about thirty five acres of the land that are held by an adverse title, which is older and superior to that of said Gideon D. Marcum, deceased, and that said title is now owned and the lands occupied by Edward Illsly, and plaintiffs are unable to get possession of the land which said commissioners alloted to them; that, at the time said commissioners made said allotments, they believed that the estate of Gideon D. Marcum was the only claimant or owner of the whole of said 109 7-10 —106 acres of land, and they knew no better until after their report had

been made, filed, and confirmed, and until after they had gone upon the land and run it out, long after the report had been made and confirmed.

The plaintiffs further allege that the tract of land in Wayne county which said commissioners allotted to the plaintiffs was sold for taxes thereon for the years 1890 and 1891, and that it was bought in at the tax sale by one J. C. Miller, and afterwards the clerk of the county court of Wayne county made and executed a deed to said Miller, conveying to him the whole of said tract of land, and that said Miller has now taken possession of the same, all of which was unknown to said commissioners at the time they made their partition as aforesaid, and was also unknown to the plaintiffs at the time said partition was made, and at the time the report was filed and confirmed. Plaintiffs further say that they paid a very large sum of money for the interest in the estate of Gideon Marcum, deceased, and, without any fault of theirs, that the shares which have been allotted to them are held adversely to them, and can not be recovered by the plaintiffs, with the exception of a part of the 109 7-10 acre-tract which was set apart to the plaintiffs near the Gideon D. Marcum homestead; that upon equitable division of the estate of Gideon D. Marcum, deceased, they are entitled to two-elevenths of all the lands that were owned by Gideon D. Marcum at the time of his death, and that, if they received what they are entitled to, they would have allotted and laid off to them about two hundred and sixty acres of land, representing two-elevenths of the whole property, but, on the contrary, that they have received less than sixty acres of land, through the mistake of the commissioners who allotted it to them, and through the forfeiture of the title at the tax sale while the proceedings were pending to partition the estate; that it would be unconscionable to force them to accept sixty acres of land, through the mistake of said commissioners, and allow the other heirs of Gideon D. Marcum, deceased, to have their full shares and enjoy their full benefits, and force all the loss which was occasioned to the estate before it was partitioned upon the plaintiffs alone. And they pray that said lands may be sold, and the proceeds divided and distrib-

uted in proportion to the respective shares, or that it may be partitioned, if capable of an equitable and just partition, and the interest of each set apart; that their bill of review may be filed, and the decree confirming said report may be set aside and reversed; that the said report may be set aside, and a new partition directed to be had between all the parties concerned; and for general relief.

This bill of review appears to have been sworn to and tendered on the 7th day of May, 1894, and was then objected to. On the 20th day of June, 1894, H. C. Ragland was elected as special judge to hear this case, who, having considered the objections made at a former term to the filing of said bill of review, overruled said objections, and allowed said bill to be filed; and thereupon the defendant Henry Marcum filed his demurrer to the said bill of review, in which the plaintiffs joined, and the said demurrer was set down for argument, and the court, upon consideration, sustained said demurrer, and, the plaintiffs declining to amend, said bill of review was dismissed at the costs of plaintiff; and from this action of the court the plaintiffs in said bill of review appealed.

The only error assigned by the appellants is that "the court erred in sustaining the demurrer and dismissing the bill, because its allegations abundantly showed that the evidence discovered by the appellants after the final decree in the original suit was amply sufficient, if taken before the hearing upon the original bill, to have sustained appellants' contention, and said after discovered evidence could not have been by said petitioners ascertained, by the use of due diligence, before the hearing of the original cause."

Now, in order that a bill of review may be sustained, it is necessary that a final decree should have been rendered in the cause which is sought to be reviewed, and the causes for which a bill of review may be maintained are limited as follows: (1) There must be error in law apparent upon the face of the decree; or (2) the party seeking to review the decree must allege and prove the discovery of new matter, which could not have been used at the time of making the decree, in consequence of the party's ignorance that such matter existed.

In the case under consideration the plaintiffs in the bill of review seek to sustain their bill under the second of the causes above named, to wit, new matter discovered after the date of the decree complained of. In the case of *Carter* v. *Allen*, 21 Gratt. 245, Christian, J., delivering the opinion of the court, speaking of the requirements and characteristics of such a bill, says: "Such a bill must not only set forth the discovery of new matter, which was discovered after the decree, but it must be accompanied by an affidavit that the new matter could not be produced or used, by the party claiming the benefit of it, in the original cause; and the affidavit must also state the nature of the new matter, in order that the court may exercise its judgment upon its relevancy and materiality [citing Story, Eq. Pl. § 412]. In the first place, the new matter must be relevant and material, and such as, if known, might probably have produced a different determination. In the next place, the new matter must have first come to the knowledge of the party after the time when it could have been used at the original hearing. Another qualification of the rule, quite as important and instructive, is that the matter relied upon must not only be new, but it must be such as the party, by the use of reasonable diligence, could not have known."

Now, when we look to the bill of review in question, it is apparent that all of these material requisites have been complied with by the allegations of the bill, and the bill is sworn to. In the case of *M'Call* v. *Graham*, 1 Hen. & M. 12, it was held that where a decree has been affirmed by the court of appeals a bill of review ought not to be granted to reverse it for any errors on the face of the proceedings, but if new matter be produced, which was unknown to the party applying, at the time of the decree, the court may, and, if the evidence warrants it, ought to grant such bill of review. So, in *Winston* v. *Johnston's Ex'rs*, 2 Munf. 305, it was held that "new matter is no ground for a bill of review, unless it was discovered since the decree was pronounced." See, also, *Ellzey* v. *Lane's Ex'x*, 2 Hen. & M. 589; *Wiser* v. *Blachly*, 2 Johns. Ch. 486. So, in Enc. Pl. & Pr., under the title "Bill of Review," the

law is thus stated: "The new matter for which a bill of review will lie must be relevant and material—such as would probably have changed the result, had it been brought forward, and which was not known to the plaintiff or his attorney in time to be used in the suit, and could not have been known by the use of reasonable diligence. Newly discovered evidence which is merely cumulative, or goes to impeach the character of witnesses, is not sufficient." In the case of *Henry* v. *Davis*, 13 W. Va. 230, this Court held that "when the Supreme Court of Appeals makes a decree, and sends the cause back for further proceedings, there can not be a bill of review to correct the decree for error apparent. By 'error apparent' is meant such as appears upon the face of the proceedings, and that includes all that was included in the issue; but a bill of review, or supplemental bill in the nature of a bill of review, will lie for after discovered evidence, subject to the rules applicable thereto." As to the principles governing the filing of bills of this character, see *Nichols* v. *Heirs of Nichols*, 8 W. Va. 175, and *Amiss* v. *McGinnis*, 12 W. Va. 371. Barton, in his Chancery Practice, on page 336, states the requirements when a bill of review is based on after discovered evidence, and says, "It is never a matter of right, but rests in the sound discretion of the court."

When we look at the allegations of this bill in the light of the authorities we have quoted, we can but think it complies with the requirements. The court, in making this partition, appointed a surveyor to go upon the lands, and carefully examine and lay off the lands and assist the commissioners in making partition of the lands, which duty he complied with, and returned his field notes with the report. This report was made under the immediate supervision of the court, and it must be presumed that neither the surveyor nor the court had any knowledge of the interest mentioned in the bill of review, depriving the plaintiffs of so much of their valuable land, or the decree of partition would not have been confirmed, making such an unequal distribution of the property.

Besides, there is an implied warranty in case of partition. Rawle, Cov. § 270, says, "In the case of a partition

(which, as is familiar, was only allowed, by the common-law, as between parceners) a warranty was implied from the partition itself." Freem. Co-Ten. p. 708, § 533, says: "In partition of land a warranty is implied, because of the privity of estate. * * * Upon partition the parties are in *æquali jure.* There is supposed to be mutual confidence, by reason of the privity of estate. There is no chaffering or trafficking about it. Third persons, selected by them-selves, or appointed by the court, make the division; and if the common fund is not so large as the parties suppose, either from defect of title, or of unsoundness, as to part, the loss should be borne equally. In other words, in par-tition there is an implied warranty, both as to title and soundness."

It was the duty of the court, through its commissioners, to ascertain what land Gideon Marcum died siesed and possessed of, before it undertook to partition the same among the parties entitled thereto. The tract of land in Wayne county might have been sold to some other party by said Marcum in his lifetime, instead of being sold for taxes, and instead of thirty five acres being taken of the part allotted to plaintiffs, by better title, the whole thereof might have been taken; and yet it would have been in-equitable to allot to the other heirs lands with good titles, and partition to the plaintiffs land which did not belong to the estate. And, relying on the implied warranty, it was not the duty of plaintiffs to investigate these titles dur-ing the pendency of the partition. As soon as the plaintiffs ascertained the injustice that had been done them, they sought their remedy by bill of review. As their bill was presented in due time, and upon examination of the au-thorities, my conclusion is that the bill of review complies with the requirements of the law, and the court erred in sustaining the demurrer thereto, and dismissing the plaint-iffs' bill, the decree complained of must be reversed, and the cause remanded, with costs to the appellants.