# CHARLESTON.

CAIN v. BROWN.

Submitted January 26, 1904—Decided February 9, 1904.

1. DELINQUENT LAND—*Infant.*

The statute allowing infants one year after becoming of age in which to redeem lands sold for non payment of taxes, is construed liberally in their favor. (p. 661).

2. DELINQUENT LAND—*Infant.*

Where land assessed to the heirs of a deceased person becomes delinquent for non payment of taxes, and, before sale for such delinquency. partition thereof is made among the heirs, and part of the land allotted to one of the heirs is purchased by a stranger at the tax sale, any of those who shared in the partition and against whom the tax was assessed may redeem. (p. 662).

3. DELINQUENT LAND—*Right to Redeem.*

Actual production of the money in offering to redeem is not necessary when the purchaser declines to allow redemption, on the ground that the party is not entitled to redeem. (p. 662).

4. DELINQUENT LAND—*Purchaser.*

Where part of the land belonging to coparceners, and charged with taxes against them as heirs, has been sold by the sheriff for non-payment of taxes and purchased by a stranger, and is

so sold again for the non-payment of the taxes assessed against the same persons for whose delinquency the first sale was made, but for years subsequent to those for the taxes of which the preceding sale was made, and one of the heirs buys the land at the second sale, and the purchaser at the first sale does not redeem from such second purchaser, the heir so purchasing acquires, as against him, a superior and better right to the title. (p. 664).

Appeal from Circuit Court, Randolph County.

Bill by James Cain against T. P. R. Brown, trustee, and others. Decree for defendants and plaintiff appeals.

*Affirmed*

J. A. BENT and J. J. CONIFF, for appellant.

HARDING & HARDING, for appellees.

POFFENBARGER, PRESIDENT:

A tract of land, containing five hundred and sixty-one acres, delinquent for taxes for the years 1893 and 1894, assessed to "John M. Crouch, Sr's. heirs," was sold by the sheriff of Randolph county, in the month of November, 1895, and purchased by James Cain. John M. Crouch, Sr., dying some time prior to the year 1893, seized of a large landed estate, of which said tract formed a part, left surviving him his widow, Anna G. Crouch, who subsequently married and was thereafter known as Anna G. Phillips, and three children, Charles E. Crouch, John M. Crouch and Lillie J. Crouch. By some means, unexplained in the record and briefs, the widow owned one-tenth of said tract and the three children three-tenths each. At the time of said sale, Charles E. Crouch was of age, but the other two children were minors. John M. Crouch, Jr., was born May 11, 1876, and Lillie J. Crouch May 7, 1880. Before the expiration of one year after the sale, Charles E. Crouch redeemed from the purchaser his undivided three-tenths.

On the 22d day of October, 1897, a decree was made and entered by the circuit court of Randolph county, by which all of the lands of which John M. Crouch, Sr., died seized and possessed, were partitioned among the heirs, and to Charles E. Crouch a tract of 750 acres was assigned, which included said tract of

five hundred and sixty-one acres. To this suit, Anna G. Phillips was a party and to her was allotted one-tenth of the whole estate. On the 17th day of November, 1897, James Cain, the purchaser of said five hundred and sixty-one acre tract, still holding seven-tenths of the same unredeemed, applied for, and received from the clerk of the county court of said county, a deed for an undivided seven-tenths thereof. Prior to the execution, of this deed, however, T. P. R. Brown, representing Anna G. Phillips in her own right and as the mother and agent of John M. Crouch, Jr., and Lillie J. Crouch, her infant children, called upon Cain and offered to pay the amount due him on his purchase of the land. The money had been furnished to him by Mrs. Phillips, after he had calculated the amount necessary to effect the redemption, and he told Cain that Mrs. Phillips had said he had promised her, upon a former occasion, before the expiration of one year from the date of the sale, to allow her to redeem after the expiration of the year, and that he had come to redeem in pursuance of that agreement. Cain refused to allow him to redeem, saying Mrs. Phillips had not done as she had promised, and that he intended to take a deed for the land. Cain does not deny that Brown called upon him, but says he offered to redeem only the interest of Mrs. Phillips, that he did not tender any money, and that he (Cain) does not remember of Brown's having mentioned the alleged verbal agreement between him and Mrs. Phillips. Brown's statement of the occurence is positive and full as to details. He says he explained to Cain the rights of the infants to redeem, and that he urged him to accept the money, telling him that, if he refused and took a deed, a suit to set the deed aside would be instituted. He further says Cain seemed reluctant to talk about it, and that his impression is that Cain informed him that he had taken advice concerning the matter.

The tract of land was charged on the land books against the John M. Crouch, Sr., heirs for the years 1895 and 1896 also, and was again sold by the sheriff in the month of December, 1897, about a month after Cain had taken his deed, and was purchased by T. P. R. Brown, trustee, acting, as is charged by Cain, and admitted by Brown, for Mrs. Phillips, John M. Crouch, Jr., and Lillie J. Crouch, and was paid for by Brown with money furnished him for that purpose by Mrs. Phillips. Prior to this

purchase, as claimed by Cain, but subsequent thereto, as claimed by Brown and the other defendants, an executory contract of sale of this tract of land was entered into by Charles E. Crouch, and Bakers and Nelsons, whereby Crouch agreed to sell said tract to W. E. Baker, C. C. Baker, P. M. Nelson, R. L. Nelson and R. M Nelson As to the date of this contract, there is some controversy, but by a clear preponderance of evidence it is shown to have been made about the middle of January, 1896. On the 20th day of December, T. P. R. Brown, trustee, assigned the benefit of his purchase to the Bakers and Nelsons, and Charles E. Crouch and wife, on the 10th day of March, 1899, executed to them a deed for the tract of land in pursuance of the contract of sale. On the 20th day of December, 1899, the clerk of the county court executed a deed to Baker and Nelson in pursuance of the purchase made by Brown at the tax sale in December, 1897.

On the 28th day of February, 1898, John M. Crouch, Jr., died and his mother, brother and sister inherited whatever interest he may have then had in the tract of land. Several attempts were made by Charles E. Crouch to redeem from Cain. He tendered Cain the money in April, 1898, to redeem the interest of John M. Crouch, Jr., and, upon Cain's refusal to accept, he deposited it with the clerk of the county court May 6, 1898. On October 6, 1899, he deposited with the clerk an additional sum for the redemption of the interest of Anna G. Phillips, then deceased, and took a receipt reciting that said sum had been tendered to Cain by Mrs. Phillips in her life time. On the same day, he deposited a further sum to redeem the interest of Lillie J. Crouch, taking a receipt reciting that it had been previously tendered to Cain.

In May, 1899, Cain brought this suit to set aside the tax deed executed to Baker and Nelson, and the deed executed by Charles E. Crouch to Baker and Nelson, and to have the tract of land partitioned between him and Charles E. Crouch, or those who are entitled to the three-tenths interest in the said land redeemed by said Crouch. The bill was answered by Brown, Crouch and Baker and Nelson, and depositions were taken and filed, and upon the hearing, the court entered a decree dismissing the plaintiff's bill, and authorizing the clerk of the county court to pay to him the several sums previously deposited for the redemption of the land.

In one aspect of the case, the two pivotal questions are, first, whether Anna G. Phillips, John M. Crouch, Jr., and Lillie J. Crouch, had such interest in the land on or about the 17th day of November, 1897, when T. P. R. Brown waited upon Cain for the purpose of redeeming on their behalf, as entitled them to redeem; and second, whether what Brown did amounted to a sufficient offer to redeem the interest of all, or any, of the parties whom he represented.

On the 22d day of the preceding month the whole of the land in question had been set apart and allotted to Charles E. Crouch, in the partition suit, and the legal title to the same was thereby vested in him. After that, did his former co-tenants have any interest in that tract of land? It is insisted for the appellant that they did not, and that their power of redemption had been taken away by the transfer of their title to Charles E. Crouch. There was an implied warranty on their part of the title to the tract of land so set apart to their co-tenant. On failure of his title, it became obligatory upon them to make good his loss. *Bowers* v. *Dickinson*, 30 W. Va. 709; *Dingess* v. *Marcum*, 41 W. Va. 757; Freem. Coten. section 533. This obligation was not an estate or direct interest in the land, legal or equitable, perhaps, but it gave them the right to uphold the title of their co-tenant. This right is incident to, grows out of, and may be treated as a part of, the estate which the co-tenants had in all the lands divided among them. All the co-tenants are to be regarded as having held, before the partition, one entire title to one entire tract of land, and each, by maintaining the title of the other, after partition, sustains the one single title to all the land divided among them. Each must do so, else the partition, in a measure, fails. The maintenance of the title of Charles E. Crouch was a matter of interest and importance to his co-tenants, for the sole reason that his land had constituted a part of the whole estate divided among them and failure of his title would have necessitated compensation out of their land. Though they may not have had an interest in that land, in the sense of an estate therein, they had a deep financial interest in it in the sense of the failure of the title thereto inflicting loss upon them. This relation to the land, coupled with the fact that they were *former owners* of it in whose name it had been assessed and taxed, and the very persons to whom the right of redemp-

tion is given by the strict letter of the statute, clearly sustains their right to redeem. "All that is required is proof of some connection past or present with the title, by deed, descent, contract, or possession. If this is made out, the party will be allowed to redeem without considering whether the title really is in him or in some adverse claimant." Blackwell on Tax Titles, sections 704, 707.

From the evidence, it is clear and indisputable that Brown did call upon Cain with the money to redeem for the two infants before their right of redemption expired. He says he had the money with him and told Cain he had come to redeem the land for the infants and their mother, and that Cain said the mother had not done as she had promised and he intended to take a deed. The redemption statute is broadly and liberally construed by all courts in favor of persons to whom it gives the right of redemption. Blackwell on Tax Titiles, section 704; Cooley on Taxation (3d Ed.) 1023. Cain says he did not produce the money. Actual tender of lawful money was excused by Cain's refusal to permit redemption. *Poling* v. *Parsons,* 38 W. Va. 80; *Townshend* v. *Shaffer,* 30 W. Va. 176; *Danser* v. *Johnson,* 25 W. Va. 380. Cain says Brown offered to redeem for no one except Mrs. Phillips. Brown says he not only went to him to redeem for all the parties, and with sufficient money to do so, but brought to Cain's attention the fact that two of them were infants and had the right to redeem. He also says he thinks Cain told him he had taken legal advice on the subject of this right of redemption. Cain's subsequent conduct and his position in this case, indicate that he relied then as now upon the extinguishment of the right of redemption on the part of the two infants by the decree of partition. He does not deny that the rights of the infants were discussed by Brown nor that he told Brown that he had consulted counsel on the subject. Upon the whole, Brown's testimony is, not only the more satisfactory in its terms, but is more consistent with the prior and subsequent conduct of the parties and the circumstances surrounding them; for which reason, we conclude that a sufficient offer to redeem on behalf of John M. Crouch, Jr., and Lillie J. Crouch was made within the time allowed them by the statute in which to redeem. Cain having declined to permit redemption, after the interests of all the parties represented by Brown had been brought to his attention,

it was unnecessary for Brown to count out the actual amount of redemption money due from each of the parties represented by him and make an actual tender of each separate amount. To require this would be to give the redemption statute a strict construction which the authorities do not warrant.

The offer to redeem in due time invalidated Cain's deed and inured to the benefit of Chas. E. Crouch, though not made by him, and perfected his title in equity to the six-tenths of the land owned by John M. Crouch, Jr., and Lillie J. Crouch before the partition, and the right thereby vested in him to have Cain's deed canceled as to said interests passed to his grantees by force of the contract and deed executed by him later. This conclusion renders discussion of the other efforts to redeem unnecessary.

As to the interest of Anna G. Phillips, the period within which redemption might be made had expired long before Brown attempted to redeem for her. There is no competent evidence of any agreement on the part of Cain to allow her to redeem after the expiration of the redemption period, unless it can be said that Cain, by saying she had not done as she had promised, admitted such agreement. That this statement amounts to an admission that there was an agreement, relating to the matter of redemption, is clear, but there is no evidence showing the terms of the agreement. The statement made by Cain may be treated as one of confession and avoidance. Upon it, an inference that there had been an extension of time may be based, but it appears from the same statement that the condition upon which it was given had not been complied with, or that the time had again expired. As to her interest, therefore, there was no redemption.

Did she acquire a right superior to Cain's by the purchase made for her by Brown at the tax sale on the 14th day of December, 1897? But for her failure, as one of the heirs of John M. Crouch, Sr., in whose name the lands were assessed with the taxes for the years 1895 and 1896, for the non-payment of which the sale at which she purchased was made, to discharge her duty by paying the taxes, the land would not have been sold at that time. To her co-heirs and to the State, she owed the duty of paying the taxes, and, as against them, she could acquire no right by her purchase at a sale predicated upon her omissions of that duty. *Batton* v. *Wood*, 27 W. Va. 58; *Williamson* v. *Rus-*

*sell,* 18 W. Va. 623; *State* v. *Eddy,* 41 W. Va. 95; Cooley on Taxation, 964; Blackwell on Tax Titles, section 566. But to Cain she owed no duty. His claim upon the title to the land was adverse to her interest. He claimed, on the ground of forfeiture and purchase by him from the State, the very title which she had, and was bound by her own interest, to uphold and defend. Between them there was no privity. Their claims were adverse and hostile, and all duties, respecting the land and the taxes thereon, previously resting upon her, were due from her to the State and persons other than Cain, and, of her violation of any of them, he had no reason to complain and her failure respecting them conferred no right upon him. Many authorities hold that no person can be a purchaser at a tax sale, whose duty it was to pay the taxes for the non-payment of which the land is sold, on the theory that the law permits no man to take advantage of his own wrong, but this rule is generally applied where the upholding of such purchase would prejudice the rights of co-tenants or other persons standing in a relation of privity or confidence with the delinquent taxpayer purchasing the land. Thus, a tenant whose duty it is to pay the taxes cannot allow the land to become delinquent and then purchase it, and thereby acquire his landlord's title. Nor can an agent acquire the lands of his principal, nor a guardian, administrator or executor the lands of the ward or heirs, nor the husband the lands of the wife. But where no such relation exists, there is no reason for the application of the rule, and the views expressed by Judge Cooley in his work on Taxation, (3d Ed.) pp. 974-976, are unanswerable except by reference to a mere technicality. He says: "There being nothing in the relation of the parties to each other upon which an estoppel can be raised, it is necessary to look elsewhere for the disqualification insisted upon; and this can only be found in some general rule of public policy. It is certainly an imperative requirement of public policy that the revenues of the state shall be collected, and that no one shall be allowed to defraud the treasury of his due proportion; but in the case where a tax sale has been made there is no fraud, and the revenue chargeable upon the land has been received. No wrong has consequently been done to the State. There has been delay in payment, but it is one for which the state makes ample provision, and for which it charges and collects all costs, as well as a

further sum under the name of interest or penalty sufficient fully to conmpensate for any public inconvenience. It is not perceived that the state can then have any complaint to make, as the duty owing to it, though performed tardily, has been performed at last, and the incidental inconvenience paid for. The state, then, not being wronged in the purchase, it would seem that if any individual objects to it he ought to be able to point out how and in what particular it wrongs him. It is difficult to dispute the truth of what is said by the supreme court of Pennsylvania, that there is nothing in reason or law to prevent a man who holds a defective title from purchasing a better at a treasurer's sale for taxes. As between himself and any adverse claimant, the state is not concerned to inquire whether the one or the other was in possession. If the state, in taxing land, takes any notice of ownership, it is either for the convenience of the officers in making collections or for information to parties concerned. The tax is upon every possible interest in the land; and all parties having interests are equally under obligation to the state to make payment. The penalty for failure is a forfeiture or sale which will cut them all of; and while, without doubt, any one may defeat such a sale who can give satisfactory reasons for an assertion that it would be unjust to him for the purchaser to be allowed to rely upon it, it is not perceived that any other person can, upon plausible grounds of equity, insist upon the privilege to do so."

The application to this case of the reasoning found in the above quotation, which we approve, gives the assignees of the purchase made by Mrs. Phillips a right to the title superior to that of Cain. Had any stranger to the title, owing no duty to pay the taxes for which it was sold, made this purchase, it would undoubtedly be good against Cain. Why then is not the purchase of Mrs. Phillips, whose interests were adverse to his, and who owed him no duty in the premises, equally good? What the status of her purchase would be, if attacked by Charles E. Crouch or some person claiming under him, or by some one else to whom she was under obligation to protect the land from sale, or estopped by her situation from holding the title so acquired, we need not decide. It is generally held that the purchase operates, in such case, as a redemption or as a mere payment of the taxes and confers no title. *Batton* v. *Wood* cited. Whether this be

true, or whether the purchaser takes a good title, but is, in equity, bound to hold it in trust for his co-tenant, principal, landlord, ward or other person whose rights he has violated, like one who purchased land with money furnished for the purpose by another and takes a deed, conveying it to himself, are questions not presented by this record, for no such person complains. It is enough to say the sale cannot be set aside at the instance of one to whom the purchaser owed no duty which has been omitted, and who stands, not in any relation of privity or confidence with, but in an attitude of manifest and extreme hostility to, the purchaser.

Seeing no error in the decree, we affirm it.

*Affirmed.*