# CHARLESTON.

## CALLIHAN *v.* RUSSELL.

Submitted January 19, 1909. Decided December 21, 1909.

1. TAXATION—*Tax Sale—Redemption.*

    If one entitled to redeem land from tax sale, because of the ownership of an interest therein, obtains, within the year for redemption, by reliance upon her right to redeem, an assignment of the tax purchase in the name of her husband, upon which assignment a deed for the land is obtained in his name after the expiration of the year, equity will declare the transaction to be a mere redemption of the land. (p. 527).

2. SAME.

    The law which gives one a privilege of redemption will not suffer him to convert it into a privilege of purchase; and whatever form the transaction between him and the tax purchaser may assume, it will be held to be in fact a redemption. (p. 528).

3.  SAME.

Where there is such relationship by privity or otherwise between parties owning interests in the same land that it would be manifestly inequitable for one of them to secure a tax title to the land to the exclusion of the title of the others, the acquiring of such tax title will be held to operate only as a redemption of the land.  (p. 529).

Appeal from Circuit Court, Barbour County.

Bill by William F. Callihan and others against Calvin Russell and others.  Decree for defendants and plaintiffs appeal.

*Reversed and Remanded.*

*Melville Peck,* for appellants.

*Samuel V. Woods,* for appellees.

ROBINSON, JUDGE:

For taxes delinquent for the year 1900, a tract of 64 acres of land was sold by the sheriff of Barbour county to S. A. Moore and W. T. George.  The sale was made January 12, 1903.  The land was sold under an assessment and delinquency in the name of William F. Callihan and wife.  It had been conveyed, in 1873, to James Stewart, trustee, by the father of Callihan, for the exclusive use and benefit of Callihan and his wife, Penelope Jane, during their natural lives or the life of either of them. Upon the death of both of these parties, the remainder in the trustee was to cease and determine, and the deed then vested title to that remainder in the surviving children of the body of Callihan.  The deed was in consideration of love and affection. Since the date of this conveyance Callihan and his wife had been in possession of the land.  She died in 1903, and he continued to use and occupy his life estate therein.  He failed to make redemption from the tax sale within the year from its date.  He was relying upon one of his sons to attend the matter of these taxes, but the son neglected to do so.  Flora Russell, one of his children, with her husband, Calvin Russell, some time before the expiration of that year, sought the tax purchasers and began and continued negotiations with them to the effect that, on the day before the time to redeem would expire, Calvin Russell secured from them the following writing:  "Rec'd from Calvin Russell sixty dollars for which we have entered into an agree-

ment with him to take tax deed and convey such title as we get for Callahan land. In case said land is redeemed and we are prevented from taking tax deed, we are to return to him the above sum. This Jan. 11, 1902.

WM. T. GEORGE,
S. A. MOORE."

On the 6th day of February, 1903, Moore and George obtained a tax deed for the land, pursuant to their purchase at sheriff's sale. Then Flora Russell again visited them, and they delivered to her a deed conveying the land to her husband, dated March 21, 1903. After consulting with counsel, she placed this deed on record. Her father visited Moore and George and offered to redeem the land, at the very time she was there seeking the deed. His offer to redeem was refused, and the dealings with Mrs. Russell and her husband were consummated.

Callihan and four of his children thereupon sought redress by this suit in equity against the title which was obtained in the name of Calvin Russell from Moore and George. There are some features of the bill and amended bill that we need not extensively notice. They are not sufficient in their allegations to support an attack upon the validity of the tax sale to Moore and George. The allegations of these bills are sufficient, however, to show that the transaction between Flora Russell and her husband and the holders of the tax purchase was in fact a redemption of the land from the tax sale and that such redemption must be held to operate for the benefit of the plaintiffs and the other children of Callihan. Calvin Russell answered and relied upon his deed from Moore and George. Upon the hearing on the pleadings and proofs, the court denied relief to plaintiffs and dismissed the bill. We have this appeal.

The evidence does not support the theory upon which plaintiffs originally founded their case—that Flora Russell represented to Moore and George that she was taking over the tax purchase for the benefit of all who were interested in the land and that the deed to her husband must therefore be held to be in trust for such persons. But the evidence does support that to which the plaintiffs are plainly entitled upon facts appearing in the bill and amended bill, and which is obtainable under the prayer for general relief. It supports the right of plaintiffs to

have the payment made by Flora Russell and her husband to the holders of the tax purchase, before the expiration of the limit to redeem, declared to be in full and complete redemption of the land from the tax sale for the benefit of the life-tenant and remaindermen.

From the evidence, it cannot be gainsaid that Flora Russell and her husband, acting wholly upon her right as owner of an interest in the land, secured the receipt for the payment whereby a deed was made to her husband. Nor can it be gainsaid that this transaction occurred before the expiration of the limit for redemption. The receipt shows that it was within the time. Calvin Russell produces that receipt with his answer. And specific, undenied testimony shows that Flora Russell and her husband used the right to redeem to which she was entitled as the power whereby they induced Moore and George to agree to convey the land to her husband for the small sum of $60. It was only that right that caused Moore and George to accept an insignificant sum for a valuable farm. Flora Russell and her husband were on most unfriendly terms with her father. They set out to defeat his interest in the land by this transaction. The so called purchase was made in the name of the husband solely to oust the other owners of the land from their interests. It was made within the time to redeem, on the strength of the right to redeem, and in bad faith to those in privity of ownership with them. These pertinent facts stand out boldly from the evidence as a whole. Mark you, it is shown that the tax purchasers were by Flora Russell and her husband given flatly to understand that they must deal with them before the year expired; that if they did not do so she would redeem. She and her husband would not permit Moore and George to become absolute holders of the title. The testimony of Moore is concisely in point. It is uncontradicted. He says: "Just before the expiration of the year, dating from the time of the purchase of the land at sheriff's sale, Mrs. Calvin Russell called on me in relation to the redemption of this land. As I remember it, we finally agreed to let her redeem the land, but told her we preferred taking a deed for it, and then dealing with her, which she would not consent to. Afterward, her husband came, and possibly she accompanied him. I am not sure as to this, and stated that

the deed must be made to him. As I recollect it, either Mr. or Mrs. Russell stated that it had been ascertained from their attorney that any conveyance to or redemption of this land by Mrs. Russell would not serve their purpose, inasmuch as such conveyance, or redemption, would be for the benefit of all the heirs. Finally the deed, or quit claim was made, as I now remember it, to Calvin Russell, for a consideration of $60 in hand paid."

So, we have seen, Flora Russell relied upon her right to redeem. And that which she and her husband brought about by their dependence upon the right of redemption must be considered a redemption. It was the law whereby she could redeem that gave her husband the deed which he holds. That deed was obtained solely by the use of her right to redeem. The evidence as to this fact is decisive. Therefore, the deed must partake of the character of that which gave it birth—redemption. Since it was born of redemption, it is redemption. And it was produced by the exercise of a right, which right when exercised, must be beneficial to all interested in the ownership of the land. Even if it be true that the remainderman owes no duty to the life-tenant to pay the taxes, still the remainderman owes a duty to himself and his co-remaindermen to redeem. But he cannot exercise redemption without its inuring to the benefit of the life-tenant. Redemption in such case inures to the benefit of the life-tenant, since the remainderman can only redeem the estate as a whole. Our law provides for no redemption of a mere interest, except as to persons who have been under disability. Flora Russell having an interest in remainder, therefore, could not rely upon her right to redeem, and vitually exercise it, without the act's inuring to the benefit of the life-tenant and the other remaindermen. "It may often happen that one to redeem his own interest is compelled to redeem for others also, and it may seem reasonable to him that under such circumstances he should acquire the title. But the law which gives him a privilege of redemption will not suffer him to convert it into a privilege of purchase; and whatever form the transaction may assume as between him and the tax-purchaser, the law will hold it to be in fact a redemption. The remedy of the party redeeming under such

circumstances will be to call upon the other party or parties interested for such reimbursement or contribution as under the facts would be equitable." Cooley on Taxation, 1052.

Besides, good faith and fairness between those in privity in the ownership of the land demanded that Flora Russell redeem the land, since it appears that she knew. of the delinquency in time to redeem and the others in interest either had no knowledge or were allowing time to steal upon them and to deprive them of their estate. She did not call to their attention the delinquency. Yet, instead of doing that which good conscience and fairness demanded, she and her husband sought to take advantage of the ignorance or oversight of those to whom they at least owed the duty of fairness. For a month before the expiration of the time in which redemption could be made, they were secretly contriving to get title to the land by the force of the right to redeem. And after they had secured the so-called purchase, Flora Russell in person was secretly perfecting it by seeking a deed at the very time her old father was in the same house asking the tax purchasers to take from him the amount due as for a redemption. She admits that she heard his offer, but that she did not disclose her presence to him. The mere fact that the time for redemption had expired does not excuse her. It had not expired when she and her husband put on foot the securing of the advantage she was then consummating in the name of her husband. The use of the name of the husband in the transaction is a badge of their secretly contriving to obtain an advantage. Equity frowns upon such advantage as has here been taken, and will readily relieve therefrom.

There is close privity of ownership between the remainderman and the life-tenant. Here it arises from a conveyance, based on love and affection, made by an ancestor for the mutual benefit of his children for life and. their children after them. Those entitled owe a common allegiance to the deed and are in equity bound to observe the true intents and purposes of the conveyance. A duty arises, from the acceptance of the benefits, to observe the wishes of the grantor from whom those benefits come. Thus, in reality a relation of confidence exists between the life-tenant and the remainderman. In considera-

tion of the common source of their estates, the common conveyance vesting those estates, and the origin, character and purposes of that conveyance, the parties do in fact owe to each other the duty of mutual protection of their respective estates vested thereunder. It would be manifestly inequitable to permit the remainderman to become a purchaser at tax sale so as to oust the life-tenant and thereby frustrate the very scheme of the conveyance under which that remainderman is entitled. True, it is the duty primarily of the life-tenant to pay the taxes. Under our law they are assessed to him. But, if the taxes, through oversight or delay, are not paid by the life-tenant and the remainderman purchases at tax sale or acquires a tax purchase arising from the ·default, the law presumes that his act was only a payment of the taxes. It was his duty either to pay them and obtain reimbursement from the life-tenant or to remind the life-tenant of his delinquency. The equity of the situation imposes the duty to do one of these things. The privity to which we have referred imposes this duty. The protection of related estates demands that the remainderman perform it. By violation of this duty, he could no more divest the life-tenant than that life-tenant could divest the remainderman by neglect of duty as to the taxes. Here is involved virtually the same principle that applies as between co-tenants, joint tenants or tenants in common, and all other persons standing in relation of privity or confidence. *Cain* v. *Brown,* 54 W. Va. 656, and other cases; 13 Enc. Digest Va. and W. Va. Reports 138 and 139. The principle springs from a relation of privity or confidence. It demands the performance of a duty arising from relationship. This duty makes it inequitable as between the life-tenant and remainderman that one should buy a tax title to the exclusion of the other. And where he does buy, the act operates only as a payment or redemption. Cooley on Taxation, 965, 1052, 1053. "If the circumstances of the particular transaction are such that it would be contrary to the recognized rules of law, or of equity, as between the purchaser and the holder of the existing title, that the former should make the purchase, it will not be allowed to prevail, but will be treated as a mere mode of payment." Black on Tax Titles, section 275. One is precluded from making a tax

purchase where there is something in the circumstances of the case which renders it inequitable, as between himself and the holder of the existing title, for him to become the purchaser. So says Judge Cooley in *Blackwood* v. *Van Vleit*, 30 Mich. 118. In the case now before us, we clearly observe that which is so manifestly inequitable that it precludes Calvin Russell from relying upon the purchase made in his name, from Moore and George. That deed is the result of the effort of Flora Russell, who was under a duty to the life-tenant arising from a relation of privity and its attending confidence, to add to her title through a failure to regard the duty. Her transactions in the premises gave her and her husband no better title. In equity it is a mere redemption. "One who is under any legal or moral obligation to pay taxes on land cannot, by neglecting to pay the same, and allowing the land to be sold in consequence of such neglect, add to or strengthen his title, either by purchasing at the sale himself, or suffering a stranger to buy and then purchasing from him." *State* v. *Eddy*, 41 W. Va. 95.

The trustee, James Stewart, in the light of the conclusion that we have expressed, is not an indispensable party to this cause. He is merely a passive trustee holding the legal title of the life-tenant. Since the life-tenant may redeem, unquestionably the life-tenant may also maintain a bill to redeem. Defendants were entitled originally to have the trustee brought in as a party, so that, in case they successively defended against a demand of the life-tenant to redeem, the trustee would be precluded from again litigating the same issue by a like demand on his part. But, as we view it, the cause is plainly for plaintiffs, and the absence of the trustee as a party cannot prejudice defendants, since he could never claim redemption now that it is granted the party whom he represents. An adjudication of the fact of redemption in favor of the life-tenant forever precludes him from seeking the same. The failure to make the trustee a party was not originally relied upon in the court below. Owing to our conclusion in the case, this failure now does no harm. And what we have said relative to the failure to make this trustee a party applies with equal force as to the failure to have before the court all of those entitled as remaindermen. Since redemption took place, a decree

to this effect will operate also for the benefit of remaindermen who are not parties, and, therefore, they can never claim redemption by a suit on their own behalf. And certainly there is now no necessity to have them before the court so that they might be precluded by a decision contrary to the one we reach.

The decree dismissing the bills of plaintiffs will be reversed, and the cause will be remanded with directions that a decree be entered therein according to the principles herein announced, declaring that Flora Russell has redeemed the land from the tax sale, declaring that redemption to be for the benefit of the plaintiffs, setting aside the tax deed which was obtained by Moore and George after the date of such redemption, setting aside the deed made by them to Calvin Russell, refunding to Flora Russell from the amount tendered and deposited by the plaintiffs in this cause the actual sum that she should have paid the tax purchasers as for a redemption of the land, and refunding to plaintiffs the residue of the amount of their deposit.

*Reversed and Remanded.*

BRANNON, JUDGE:

While I do not find authority to pointedly sustain the doubt which I feel, I must say I doubt the right to take from the tax purchaser the life estate. The decision seems just, but how as to the law? The remainderman owes no duty to the life tenant to pay taxes; but, on the contrary, the life tenant owes it to the remainderman to pay, and if the land is lost, the remainderman can hold him liable for default where the sale in the life tenant's name passes the fee. 33 L. R. A. 695. The decision lets the life tenant take the benefit of his own default. The law is that any one may buy at a tax sale who owes no duty to pay the taxes. It will be understood that I admit that purchase by one cotenant in the remainder is for all.